Ernest WEISSBERGER et al., Appellants,

v.

BROWN–BELLOWS–SMITH, Inc., et al.,
Appellees.

No. 12909.

Court of Civil Appeals of Texas.

Galveston.

April 12, 1956.

Rehearing Denied May 3, 1956.

Thomas J. Graham and Levert J. Able, Houston, for appellants Ernest Weissberger, Jack Goldman and May's Realty, Inc.

Fountain, Cox & Gaines and W. G. Fox, Houston, for E. S. Levy & Company, Ltd.

Frank Briscoe and George W. Rice, Houston, and Butler, Binion, Rice & Cook, Houston, of counsel, for appellees.

HAMBLEN, Chief Justice.

Appellants, Ernest Weissberger, Jack Goldman, and May's Realty, Inc., instituted this suit in the District Court of Harris County against appellee to recover damages for an alleged breach of a leasing contract. Appellee answered and filed a cross-action for damages based on appellants' failure to occupy the leased premises. At the conclusion of appellants' evidence, submitted before the court and a jury, the court, upon motion by appellee, instructed the jury to return a verdict favorable to appellee. Appellee moved to sever its cross-action, which motion was granted, and judgment was entered that appellants take nothing.

Prior to the trial of the cause, certain parties, asserting rights in the leasehold estate as sub-tenants under appellants, intervened, and sought damages against both appellants and appellee arising out of the alleged breach of the leasing contract. Appellee filed a motion that such interven-

tions be stricken, which was granted. One of such intervenors, E. S. Levy & Co., Ltd., appealed from such order, and is before this Court as intervenor. On appeal, such intervenor has joined generally in the brief submitted by the appellants, and separately presents one point of error, directed to the action of the court in striking its intervention.

The facts are substantially as follows:

A contract was entered into on February 23, 1950, between appellee Brown-Bellows-Smith, Inc., as lessor, and appellants Weissberger and Goldman as lessees, which contemplated the construction of a building in downtown Houston by Brown-Bellows-Smith, Inc. A part of such building was leased to appellants, Weissberger and Goldman, for the operation of a large clothing department store. The lease was for 30 years and provided for a $110,000 guaranteed annual minimum rental plus a percentage of sales. The appellee corporation obligated itself to use reasonable diligence to complete the building, and Weissberger and Goldman were obligated to prosecute with reasonable diligence the installations of furniture and fixtures necessary to the operation of the department store. The lease contract provided that written consent of the lessor was necessary for the lessees to sublet or to assign the lease and consent was given in the lease for Weissberger and Goldman to sublet various departments of the store so long as they themselves supervised the over-all operation. In connection with the assignment of the lease, the contract provided that appellants, Weissberger and Goldman, could assign to a corporation provided they owned at least 66% of the capital stock in such corporation, and provided further that the corporation had an excess of assets over liabilities in the amount of $400,000.

Work was begun on the building in the latter part of 1950 and the leased premises were tendered appellants, Weissberger and Goldman, on May 16, 1952. After the leasehold was tendered to lessees, the installation of fixtures, necessary to the operation of the store, was begun but never completed.

On July 25, 1952, Brown-Bellows-Smith, Inc., sent a notice to Weissberger informing him that he was in default of his obligations under the lease, and advising him that if such default were not corrected it was the lessor's intention to terminate the lease. At the time default notice was sent, appellant Weissberger was in New York attempting to arrange financial support. It is conceded that Weissberger took no action at all in connection with the completion of installation of fixtures or in the operation of the store in the leased premises subsequent to early August, 1952. On September 2, 1952, appellees sent lessees a letter asserting an intention to terminate the lease and, finally, on March 31, 1953, Brown-Bellows-Smith, Inc., notified appellant Weissberger of final cancellation of the lease.

Weissberger, Goldman, and May's Corporation sued Brown-Bellows-Smith, Inc., and William A. Smith, individually and as president of Brown-Bellows-Smith, Inc., alleging damages caused by (1) delay of Brown-Bellows-Smith, Inc. in tendering the leasehold premises and (2) wrongful eviction.

Appellants present six points of error which are too lengthy to be stated here in full. After our review of the record presented, and the briefs of the litigants, this Court has concluded that none of appellants' points is well taken, and that all must be overruled. The substance of appellants' points of error will be disclosed in our discussion of the reasons for our stated conclusion.

■■ Lessees in the lease contract between appellants and appellees were E. Weissberger and Jack Goldman. The evidence is undisputed that by instrument dated October 11, 1951, Jack Goldman assigned his interest in the lease to E. Weissberger, and thereafter abandoned his obligation under the lease. There is no dispute but that this assignment violated the

terms of the lease contract, as well as the terms of Article 5237, Vernon's Ann.Tex. St. These undisputed facts are sufficient to support the judgment of the trial court. By their point of error No. 1, appellants insist, however, that the assignment was made with the consent of appellee, and that appellee waived its right to forfeit the lease because of such assignment. The record does not support appellants' contentions in these respects. The proof upon which appellants rely consists of evidence that Weissberger stated to appellee Smith that Jack Goldman was discouraged and wanted "out", in response to which Smith replied, "I have no objection to your paying him out but I will not release him from the lease." This evidence is insufficient to prove either consent or waiver. Appellants were personally obligated under the lease contract to equip and furnish the leased premises, and to use the space for the conduct and operation of a retail department store. Following the assignment, Goldman abandoned such obligations. The fact that he remained personally liable for the minimum rentals provided for does not prevent his action from amounting to a breach of the other obligations mentioned. Furthermore, appellants' contention that appellee consented to the assignment is completely refuted by the testimony of Weissberger relating to a conversation with a Mr. Golden, in New York. This conversation occurred subsequent to the assignment by Goldman, and subsequent to the conversation between Weissberger and Smith upon which appellants rely as evidence of consent. Weissberger's relation of the conversation with Golden shows conclusively that he did not at that time consider that appellee had consented to the Goldman assignment.

Appellants' contention that they used reasonable diligence to make their installations and open their department store, as required by the contract, is presented by their point of error No. 2. Rather than support this contention, the evidence appears to this Court to conclusively establish the contrary. There is no evidence whatsoever that either E. Weissberger or Jack Goldman individually undertook the performance of any obligation under the lease to make the installations and open the department store. The only performance in any degree was by May's, Inc. This corporation had no legal interest in the leasehold, and was not in privity with appellee. No contention is made that this corporation met the requirements of the lease contract so as to qualify as a corporation to which appellants were authorized to assign the contract. On the contrary, on July 25, 1952, the date on which appellee first complained of appellants' failure to perform their obligations, the evidence is undisputed that May's, Inc., owed obligations amounting to $202,588, and had assets totalling $3,945.83. All work on such installations as had been started had stopped prior to July 25, 1952. These circumstances establish non-performance as a matter of law. Appellants' obligations were personal, and could not be delegated. Enterprise Co. v. Neely, Tex.Civ.App., 217 S.W. 1088. Aside from that, here the corporation to which performance had been delegated had failed to perform, and was shown conclusively to be unable to perform.

As a part of their argument under point of error No. 2, appellants assert that they were prevented from complying with their obligations above mentioned because of non-performance by appellees of their obligation to complete the building to be occupied by appellants. The non-performance complained of consisted of the fact that the plaster was wet, certain air-conditioning ducts had to be moved, and certain lighting fixtures had to be installed. We have carefully examined the evidence upon which appellants rely in support of this contention and conclude that it establishes substantial performance, as defined by this Court in Uvalde Rock Asphalt Company v. Fantham, 210 S.W.2d 646. Substantial performance is regarded as full performance of a building contract. Ditmar v. Beckham, Tex.Civ.App., 86 S.W.2d 801.

Aside however from our construction of the evidence, as above set forth,

the evidence conclusively establishes the fact that when the leased premises were tendered by appellees to appellants on May 16, 1952, appellants took possession of the premises, and caused the installation of equipment to be commenced. This has been held to estop appellants to deny that appellees failed to comply with their contract relative to the construction of the leased premises. Bratcher v. Moore, Tex.Civ. App., 219 S.W.2d 527.

■ Appellants' complaint that appellees constructed a twelve, rather than a three, story building appears to this Court to have no materiality to the obligations of the respective litigants arising out of the lease contract except insofar as it bears upon the diligence or lack thereof on the part of appellees in performing their obligations under the contract. The assertion of lack of diligence on the part of appellees is the basis of appellants' point No. 6 and will be discussed hereinafter. Since it is undisputed that appellants abandoned all efforts to perform their obligations under the contract during 1952, the fact that appellees thereafter let the premises to another tenant appears entirely immaterial to any issue here presented. Insofar as appellants' argument under point of error No. 2 relates to the question of constructive eviction, our conclusions will be stated under our discussion of appellants' points No. 3 and No. 4 wherein appellants' contentions are directly asserted.

■■ The evidence shows without dispute that the premises subject to the lease were tendered by appellees to appellants on May 16, 1952. We have held that our examination of the evidence compels the conclusion that at that time, appellees had substantially performed their obligation to complete the premises for occupancy by appellants. The evidence is undisputed that following such tender, appellants made entry upon the premises. We held that these undisputed facts create in law the relationship of landlord and tenant between appellants and appellees. The fact that employees of appellees entered the premises to rectify the defects asserted by appellants, as mentioned above, does not alter the fact that appellants were entitled to and were in exclusive possession of the premises. On July 25, 1952, appellees notified appellants by letter that appellants were in default in their obligations under the lease, and that unless same were corrected within fifteen days, the lease would be cancelled. Appellant Weissberger undertook to testify that he went to see appellee Smith relative to this letter, and was told by Smith that his lease was cancelled. The proof was excluded by the trial court, and such action is the basis of appellants' point of error No. 4. Appellants ceased occupying the premises, and were thereafter, in September, 1952, notified by appellees of appellees' intention to cancel the lease. Appellees formally notified appellants of cancellation in March of 1953. By point of error No. 3, appellants contend that the letter of July 25, 1952, and the statement by appellee Smith, constituted a constructive eviction on the part of appellees. We overrule points Nos. 3 and 4. The law relative to constructive eviction of a tenant by a landlord is stated in 52 C.J.S., Landlord and Tenant, § 458, p. 179, as follows:

> "* * * a mere notice to quit, followed by vacation of the premises by the tenant, does not constitute a constructive eviction, for there must be some additional feature, such as harassing incidents disturbing to the tenant's peaceful possession and occurring on the property; and, that if the tenant moves out without protest, there is no eviction."

In Stillman v. Youmans, 266 S.W.2d 913, this Court recently held that a landlord's entry on the leased premises and repeatedly asking the tenant for past-due rent for a period of thirty minutes in the presence of the tenant's customers did not, as a matter of law, constitute a constructive eviction. Here, no act of the landlord, of which appellants complain, occurred on the leased premises. The facts do not constitute a constructive eviction, 32 Amer.Jur., page 231, Secs. 245, 246;

Coury v. Porterfield, Tex.Civ.App., 299 S. W. 938.

Appellants' Point No. 5 is in the following language:

"The Trial Court erred in entering a peremptory verdict and judgment for Appellees when the pleadings and evidence showed that without fault on Appellants' part, Brown-Bellows-Smith, Inc., wrongfully terminated and breached said leasing contract, and as a consequence the Appellants suffered (1) as special damages an actual cash outlay in performance and preparation to perform thereunder $221,059.96, and lost salaries of over $20,000.00 and (2) as damages the difference between the reasonable fair market rental value of the premises and the reserve rentals under the leasing contract, which, discounted at six per cent for the period of the lease, amounted to considerable in excess of $221,059.96."

We overrule such point for the following reasons. The only expenditures of any amount which the evidence shows to have been made were made by May's, Inc. This corporation, as previously stated, was not a party to the lease contract. The corporation therefore has no cause of action, for asserted breach of contract. 17 C.J.S., Contracts, § 518, p. 1112; City of Dallas v. Rutledge, Tex.Civ.App., 258 S.W. 534; Hardin Lumber Co. v. Shepherd, Tex.Civ. App., 40 S.W.2d 215.

There is no proof of any expenditure, and consequent damages by appellants Weissberger and Goldman.

The asserted wrongful acts on the part of appellees of which appellants complain, occurred when the relationship between appellants and appellees was that of landlord and tenant. We have held that such acts did not constitute a constructive eviction. The act of appellants in ceasing to occupy the premises amounts to a voluntary surrender of the leasehold estate. The acts by appellees of which appellants complain do not give rise to an action for the damages in favor of appellants.

By Point No. 6, appellants assert that appellees did not exercise reasonable diligence to complete the building for occupancy by appellants, and are therefore liable to appellants for such damages as resulted from such failure. Whether or not the delay on the part of appellees was sufficient to constitute a total breach of the lease contract, we find unnecessary to decide. This for the reason that appellants elected to treat the contract as being in effect at the time the premises were tendered to them by appellees. This election is conclusively established by the entry by appellants in the premises following such tender. They are consequently limited to such damages as resulted only from the asserted delay.

It is established law that in order to recover damages because of delay in the performance of a contract, such damages must be shown to have resulted from the delay complained of, and that same would not have been incurred except for such delay. Here the appellants rely upon proof of expenditures allegedly made for the purpose of equipping and opening the store which they were to operate in the leased premises. All of such expenditures as were shown to have been made were such as would have been necessary for that purpose whenever the store was equipped and opened, without regard to any delay on the part of appellees. We therefore overrule appellants' Point No. 6.

Intervenor E. S. Levy & Company presents one additional point of error directed to the action of the trial court in striking its intervention. Intervenor was conclusively shown to have no interest in the leasehold estate as a sub-tenant, or otherwise. Its sublease was with May's, Inc. This latter corporation, as heretofore pointed out, was not a party to the lease contract originally, and no assignment was shown to have been made by the original lessees to it. The record conclusively establishes that May's, Inc., had no legal interest in the lease contract. Intervenor, as a purported sublessee under that company, had no interest, and therefore could not

properly intervene. Carroll v. Hunt, 140 Tex. 424, 168 S.W.2d 238; Clark v. Turner, Tex.Civ.App., 92 S.W.2d 511. We overrule intervenor's point of error.

The judgment of the trial court insofar as appealed from is in all things affirmed.

GANNON, J., not sitting.