Jess HOOKS, Appellant,

v.

T. F. COOK, Appellee.

No. 13683.

Court of Civil Appeals of Texas.

Houston.

April 6, 1961.

Rehearing Denied May 4, 1961.

Adams & Adams, Earle P. Adams, Crockett, for appellant.

Musslewhite & Musslewhite, Benton Musslewhite, William Drew Perkins, Lufkin, for appellee.

WERLEIN, Justice.

This suit was brought by appellee, T. F. Cook, against appellant to recover for a shortage of acreage in a sale of land by appellant to appellee, based on a written contract of sale. On verdict of the jury finding that there was a shortage of 23 acres, judgment was entered in favor of appellee in the sum of $1,179 with interest from date of judgment.

Appellant in his first six Points complains in essence that the Trial Court erred in not granting him an instructed verdict and judgment notwithstanding the verdict, since under paragraph 6 of the written contract the Court should have held that appellee was bound by the determination of the acreage by the surveyor selected by the parties to make the survey.

The contract upon which the suit is based stipulates that the consideration to be paid for the property is the sum of $8,500, except that said sum may be varied in accordance with the resurvey of said property as provided for in the agreement. Paragraph 6 of the agreement is as follows:

"It is further agreed and understood by the Vendor and the Vendee that after the title to said real estate has been approved, by the said attorney for the said Vendee, that both parties acting together will select a duly licensed surveyor, who shall thereupon make a survey of the real estate and land hereinabove described all at Vendee's expense, and shall determine the amount of acreage free and clear of any boundary disputes or encroachments, and the surveyor's determination of the acreage shall be binding on both parties hereto in determining the total contract price for the said land and real estate

as above set out, and it is further understood and agreed that the base acreage for determining the above mentioned purchase price was and is 280 acres, and that in the event such surveyors determination of the acreage is less than 280 acres the above mentioned purchase price shall be reduced by an amount calculated at Thirty & No/100 ($30.00) Dollars per acre for such shortage, but should said surveyors determination of the acreage be more than 280 acres, then said purchase price shall be increased by the sum of Thirty & No/100 ($30.00) Dollars per acre for such overage."

Pursuant to paragraph 6 of the agreement, the parties selected a duly licensed surveyor, one W. O. Kirkland, who made the survey and determined the total acreage in the tract to be 281.78 acres. The sale was consummated on March 9, 1948 with an adjustment of acreage being made in accordance with his determination. After purchasing the property appellee made sales of several small tracts out of the large tract, the aggregate number of acres sold being approximately 40.94 acres. When appellee undertook to sell the balance of the tract of land to one Miller in October, 1955, said shortage in the acreage which appellant had sold to appellee was discovered.

Appellant contends that appellee cannot recover herein since the contract provides that the determination of the acreage by the selected surveyor shall be binding on both parties. It is evident that the reason for the stipulation in the contract was to determine and fix the total price that was to be paid and accepted for the land. Both parties had confidence in the surveyor and agreed that his determination of the acreage would be binding upon them. The sale was consummated on the basis of his calculation or determination of the acreage some seven and one half years before any shortage was discovered.

We have not found or been cited to any case directly in point. There are cases, however, which by analogy suggest the answer to the question here. In Keeble v. Black, 4 Tex. 69, our Supreme Court held that parties having agreed to abide by the opinion or guess of a third party as to the amount of corn in a lot were bound thereby in the absence of fraud or misrepresentation, more especially after having used the corn. There are many cases which establish the rule that one cannot be compelled to accept title to land which his attorney in good faith has refused to approve, where the contract requires the title to be perfected "to the satisfaction of such attorney." In Dixie Oil Co. v. McBurnett, Tex. Com.App.1928, 6 S.W.2d 83, the Court stated:

"The rule is well settled that where parties enter into a contract providing that the purchase of property is subject to the approval or acceptance of the title by the purchaser's attorney, if the latter disapproves or refuses to accept it, the seller is not entitled to enforce specific performance of the contract without pleading and proving that the attorney's rejection of the title was arbitrary or in bad faith." [Citing numerous cases.]

See 10-A Tex.Jur., p. 61.

A similar rule is applicable to construction contracts. In Harrell v. City of Lufkin, Tex.Com.App.1926, 280 S.W. 174, 176, it is said:

"It is unquestionably true that parties to an executory contract may include in their agreement a provision designating a person or agency to supervise the work to be done or the materials to be used, and to inspect the same and report as to compliance, or not, of the work or materials, or both, with the contractual requirements, and they may give the supervisor's acts and decisions res judicata effect." [Citing cases.]

In Boettler v. Tendick, 1889, 73 Tex. 488, 11 S.W. 497, 498, 5 L.R.A. 270, it was held

that where a contract provided that the work was to be done under the supervision of architects whose decision was to be final, "neither party having the right to appeal therefrom," the decisions by the architects in the absence of bad faith were binding upon the parties. To like effect See Buchanan & Gilder v. Gibbs, Tex.Civ.App. 1913, 156 S.W. 914, 916, in which it was stated:

"When the parties to a contract have agreed that the decision of an architect or civil engineer, on any disputed point, shall be final and conclusive as to matters relating to the construction of a building or other structure, his action in the premises will be binding and conclusive upon the parties to the contract, in the absence of evidence of fraud, or such gross mistake as would necessarily imply bad faith, or a failure to exercise an honest judgment. Kettler Brass Mfg. Co. v. O'Neil, 57 Tex.Civ.App. 568, 122 S.W. 900. That decision was approved by the Supreme Court of this state and is sustained by numerous decisions."

We think the rule stated in 9 Amer.Jur., p. 26, § 36, may well be applied to the agreement of the parties in the instant case:

"It may be stated generally that any stipulation whereby the parties constitute an architect or engineer the final arbiter between themselves, as to any matter connected with the contract, makes the decision of the architect or engineer conclusive as to such matter. * * * It is also clear that where the parties stipulate that his determination shall be final and conclusive, both parties are found by his determination of those matters which he is authorized to determine, except in case of fraud or of such gross mistake on his part as would necessarily imply bad faith or a failure to exercise an honest judgment."

Appellee asserts that the land in question remained available for a resurvey and de-

termination of its acreage, and hence the present case is distinguishable from such cases as Texas Gas Corp. v. Hankamer, Tex.Civ.App., 326 S.W.2d 944, writ ref., n. r. e., where the property had lost its identity and its quantity could not later be determined. In that case this Court in construing the contract of the parties and in deciding that it was their intent that the determination of their common agent should be binding upon them in the absence of fraud or bad faith, took into consideration, among other things, the fact that the distillate would lose its identity after being run to appellant's plant where other products would be made or manufactured from it. There it was necessary for the court to construe a contract which did not contain any provision that the determination of the common agent as to quantity would be binding or conclusive.

■ In the instant case, however, the contract itself provides in unambiguous language, that the surveyor's determination of the acreage shall be binding on both parties in determining the total contract price for the land. Therefore, no controlling effect can be given the fact that no change occurred in the identity and quantum of the land or that it was available for a resurvey. In the present case the provision definitely makes the surveyor the final arbiter as to the acreage contained in the tract of land and his determination thereof conclusive, in the absence of fraud or of such gross mistake on his part as would necessarily imply bad faith or a failure to exercise honest judgment.

In East Texas Fire Insurance Co. v. Kempner, 87 Tex. 229, 27 S.W. 122, our Supreme Court said:

"It is equally well settled that, where the language is plain and unambiguous, courts must enforce the contract as made by the parties, and cannot make a new contract for them, nor change that which they have made under the guise of construction. As parties bind them-

selves, so they must be held to be bound."

See also Tennant v. Buratti & Montandon, Tex.Civ.App., 215 S.W.2d 201, affirmed 147 Tex. 536, 218 S.W.2d 842, 9 A.L.R.2d 742.

In First State Bank of Tenaha v. Collingsworth, 111 S.W.2d 309, writ dism., it is stated that the very object of the designation of persons to decide whether a party has complied with his contract is to prevent contention and litigation. Generally the legal effect of a determination made by persons so designated is to bind the contracting parties so that neither can question it in the absence of fraud or bad faith. 6 R.C.L. 956.

Appellee contends that the shortage of 23 acres out of a total of some 280 acres, or approximately a 9% shortage, constitutes a gross error or mistake, and that in equity he should be entitled to recovery for the shortage. He relies on Wheeler v. Boyd, 1887, 69 Tex. 293, 6 S.W. 614; Cox v. Barton, Tex.Com.App.1919, 212 S.W. 652; Denman v. Stuart, 1944, 142 Tex. 129, 176 S.W.2d 730; Reid v. Byrd, Tex.Civ.App., 34 S.W.2d 305; Ross v. Brewer, Tex.Civ.App., 251 S.W. 307; and similar cases.

There is a vital distinction between such cases and the case at bar. Those cases merely hold that where there is a sale of land by the acre, or where a tract of land is sold and it is stated it contains a certain number of acres more or less, if the deficiency is great, and is discovered after the purchase price has been paid, the mistake being a material one and mutual, it is equitable to relieve the purchaser from paying for the land which he does not get. In none of those cases was there a stipulation such as in the instant case, that the land would be surveyed prior to closing the sale, by a duly licensed surveyor whose determination of the acreage would be binding upon both parties in determining the total price to be paid for the property. In the cases relied upon by appellee it was held in effect that there may be a recovery upon showing a mutual mistake as to the amount of acreage where the deficiency is great, even though the deficiency might be somewhat less than the percentage of the deficiency in the instant case. But where there is an agreement as in the present case that the determination of the acreage by the common agent of the parties shall be binding upon both parties, we think it not sufficient merely to show that there was a mutual mistake even though it be a material mistake. It is necessary to allege and prove fraud or bad faith.

Appellee in his first amended original petition, upon which his case went to trial, did not allege any fraud or bad faith on the part of the common agent, W. O. Kirkland, upon whom both parties relied and upon whose determination they acted. Nor was there any proof of fraud or bad faith. In City of San Antonio v. McKenzie Const. Co., 1941, 136 Tex. 315, 150 S.W.2d 989, 996, the Court said:

"When parties to a building contract agree to submit questions which may arise thereunder to the decision of the engineer, his decision is final and conclusive; unless in making it he is guilty of fraud, misconduct, or such gross mistake as would imply bad faith or failure to exercise an honest judgment. Galveston H. & S. A. Ry. Co. v. Henry & Dilley, 65 Tex. 685; 4 Tex.Jur. p. 709, sec. 4, and authorities there cited."

The Court further stated that the decision of the engineer could not be set aside for fraud, misconduct or gross mistake simply by proving that some other engineer would have acted differently or given a different decision.

We can perceive of no difference in legal effect between a decision that is final and conclusive and a determination that is binding upon both the parties. Neither can be set aside or disregarded in the absence of fraud, misconduct, or such gross mistake

as would imply bad faith or failure to exercise an honest judgment.

In view of our holding, it is not necessary to consider appellant's other Points of Error.

The judgment of the trial court is reversed and rendered.