**CITY OF MIDLAND, Texas, Petitioner,**

v.

**Leonard E. WALLER et al., Respondents.**

**No. B–536.**

Supreme Court of Texas.

June 26, 1968.

J. M. Nuessle, Midland, for petitioner.

Leonard Howell, Kerr, Fitz-Gerald & Kerr, William L. Kerr, Midland, for respondents.

GRIFFIN, Justice.

The City of Midland, Texas, as plaintiff, brought this suit against Leonard E. Waller, a general contractor, hereinafter called contractor, and Travelers Indemnity Company, hereinafter referred to as surety, the contractor's surety on a performance bond, to recover damages for breach of a contract for the construction of a municipal swimming pool. In the trial court contractor and surety each moved for a summary judgment. The trial court granted the motions and entered a judgment that the City take nothing by its suits against contractor and surety. On appeal this judgment was affirmed. Tex.Civ.App., 418 S.W.2d 915.

Following the advertisement for competitive bids, as required by law, the City of Midland, Texas, entered into a general construction contract with contractor dated December 28, 1962, calling for ·the construction of a 50-meter, Olympic size swimming pool in one of the City's public parks. In addition to voluminous, detailed plans and specifications, said contract incorporated and included the A. I. A. Standard Contract Documents, consisting of various general and special conditions.

Pursuant to the requirements of the contract and of Article 5160 Vernon's Ann.

Civ.St., as amended, contractor furnished City with his performance bond, dated January 3, 1963, in the full amount of the contract price, with Travelers Indemnity Company as surety, conditioned that contractor would faithfully perform said contract according to the plans and specifications. Contractor then commenced construction of the pool.

We will first dispose of the City's application for writ of error against the surety. In answer to this application the surety contends it is not liable because suit was not filed on the bond within one year from September 15, 1963, the date the City accepted the pool and began to use the same.

The parties attached a copy of the bond to their "Stipulations and Agreed Statement of Facts." The stipulation recites: " * * * that pursuant to said contract documents and Article 5160 Revised Civil Statutes of Texas, 1926, as amended, the defendant Leonard E. Waller, as principal, and the defendant, The Travelers Indemnity Company, as surety, duly made and entered into a performance bond * * *." The copy of the attached performance bond contained the following provision: "Provided, however, that this bond is executed pursuant to the provisions of Article 5160 of the Revised Civil Statutes of Texas, as amended by the Acts of the 56th Legislature, Regular Session, 1959, and all liabilities on this bond shall be determined in accordance with the provisions of said Article to the same extent as if it were copied at length herein."

The pertinent provisions of Art. 5160 are: "No suit shall be instituted on the performance bond after the expiration of one (1) year after the date of final completion of such contract."

It is stipulated that the Certificate of Acceptance by the City's architect was dated September 15, 1963. The City's pleadings and the proof on the hearing established that the City accepted the swimming pool and paid to the contractor

the balance due on the contract price on September 15, 1963, and opened the pool to the use of the public on that date. The City alleged that about May 27, 1965, defects of various kinds were discovered in the pool; that these defects were due to the failure of contractor to construct same according to the plans and specifications, and in a good and workmanlike manner, and under the exercise of ordinary care, all of which he was bound to do under the terms of the contract and according to common law. On November 12, 1965, this suit was filed against the contractor and the surety on the performance bond for damages. This was more than two years after the City had accepted and begun the use of the pool.

█ The present suit was filed more than one year after the City accepted the pool and paid the contractor. The limitation imposed by Art. 5160 applies, and the trial court correctly rendered a summary judgment that the City take nothing against the surety. The Court of Civil Appeals correctly affirmed that judgment. We affirm the judgment of both courts below in favor of the surety.

As to the City's cause of action against the contractor, the courts below have denied the City a recovery on the ground that the architect's certificate of completion given to the City was a final determination that the contractor had complied with his obligations set out in the contract to build the pool, and the City could not hold the contractor liable for the defects appearing for the first time some twenty months thereafter.

Reliance is placed by the contractor on Art. 1.07 of the construction contract's "Special Conditions," to relieve him of any liability for damages due the City because the architect had issued his final certificate of completion and acceptance of the swimming pool September 15, 1963. The contractor also claims no liability to the City because there was nothing wrong with the pool until May, 1965, some twenty

months after the acceptance of the pool by the City.

The construction contract defined the scope of the contract's special conditions as follows: "The A. I. A. General Conditions, and the Special Conditions bound herewith are included in this specification and form a part of every branch thereof, and shall govern the work under each SECTION. Where the Special Conditions conflict with the General Conditions, the Special Conditions shall govern." Among the Special Conditions is Art. 1.07, entitled "Authority of Architect." It provides:

"All work shall be performed under the supervision of Architect or his authorized representative in a workmanlike manner and to his satisfaction. He shall decide all questions which arise under this work regarding the following, and his decisions and estimates shall be final.

"A. Quality and acceptability of the following: 1. Materials furnished and/or proposed for use; 2. work performed; 3. manner of performance * * *. B. Interpretation of Plans, Specifications and Contract Documents. C. Acceptable fulfillment of the contract. D. Compensation. * * * G. Determination of amount and quality of work performed and materials furnished."

Also, there is special condition, Art. 1.12 "Guaranty Warranty":

"Neither the final certificate of payment nor any provision in the Contract Documents, nor partial or entire use, or occupancy of the premises by the Owner will constitute an acceptance of work not done in accordance with the Contract Documents, or relieve the Contractor of liability in respect to any expressed warranties or responsibility for faulty materials or workmanship.

"The Contractor shall and does hereby guarantee for a period of one year from date of final acceptance all work as called for in the various divisions of these Specifications."

The Construction Contract also contained the following "General Conditions":

"Art. 20. Correction of Work After Final Payment. Neither the final certificate nor payment nor any provision in the Contract Documents shall relieve the Contractor of responsibility for faulty materials or workmanship, and unless otherwise specified, he shall remedy any defects due thereto—and pay for any damage to other work resulting therefrom, which shall appear within a period of one year from the date of substantial completion. The Owner shall give notice of observed defects with reasonable promptness. All questions arising under this article shall be decided by the architect subject to arbitration."

Article 25 of the General Conditions in its first paragraph provides for the architect to issue his certificate to the contractor for the progress payments upon the contractor complying with the requirements of Art. 24. Then Art. 25 continues:

"No certificate issued nor payment made to the Contractor, nor partial or entire use or occupancy of the work by the Owner, shall be an acceptance of any work or materials not in accordance with this contract. The making and acceptance of the final payment shall constitute a waiver of all claims by the Owner, other than those arising from unsettled liens, from faulty work appearing after final payment or from requirement of the specifications, and of all claims by the Contractor, except those previously made and still unsettled."

Art. 38, Architect's Status, provides in part:

"The architect shall have general supervision and direction of the work. He is the agent of the Owner only to the

extent provided in the Contract Documents and when in special instances he is authorized by the Owner so to act, and in such instances he shall, upon request, show the contractor written authority. He has authority to stop the work whenever such stoppage may be necessary to insure the proper execution of the contract.

"As the Architect is, in the first instance, the interpreter of the conditions of the contract and the judge of its performance, he should side neither with the Owner nor with the Contractor, but shall use his powers under the contract to enforce its faithful performance by both."

Art. 39, Architect's Decisions, provides in part:

"The Architect shall, within a reasonable time, make decisions on all claims of the Owner or Contractor and on all other matters relating to the execution and progress of the work or the interpretation of the Contract Documents.

"The Architect's decisions, in matters relating to artistic effect, shall be final, if within the terms of the Contract Documents.

"Except as above or as otherwise expressly provided in the Contract Documents, all the Architect's decisions are subject to arbitration."

Special Conditions Art. 1.29, Payments, provides as follows:

"Subject to the Owner's approval at the time of letting contracts, payments will be made in the following manner:

"Along with the periodical estimate the contractor will submit a letter requesting payment in the amount of 90% of the work reported in place. Inspection of this work will then be made by the Architect or his representative and if approved, forwarded on to the Owner for payment on or before the 10th of the following month. The ten percent monthly balance will be amount withheld during construction. Final request for payment will be made in the same manner, but after the final inspection and will be payable by the Owner within ten days."

We are aware of those cases such as Boettler v. Tendick, 73 Tex. 488, 11 S.W. 497, 5 L.R.A. 270 (1889); State v. Martin Bros., 138 Tex. 505, 160 S.W.2d 58, 60 (1942); City of San Antonio v. McKenzie Construction Co., 136 Tex. 315, 150 S.W.2d 989, 996 (1941); Kettler Brass Mfg. Co. v. O'Neil (1909), 57 Tex.Civ.App. 568, 122 S.W. 900, writ refused, which hold that if the contract provides that the decision of the architect or engineer in charge of the construction project shall be final and binding on all parties that the contractor has fulfilled his contract, then the liability of the contractor to the owner is ended when a final certificate of acceptance is issued. In the case at bar there would be a further liability of the contractor to the owner for defects becoming apparent in one year, as provided in Art. 20, General Conditions, and Art. 1.12, Guaranty Warranty, Special Conditions. The "Stipulation and Agreed Statement of Facts" herein set out that no defects were evident until some twenty months after acceptance and the architect had issued his final certificate that contractor had fulfilled all of his obligations under his contract and advised the City to accept the swimming pool, which it did.

However, none of the cases cited above contained the provisions we find in Arts. 20 and 25 and special conditions Art. 1.12. The language of these articles is clear and unambiguous to the effect that neither the architect's final certificate of acceptance and payment of the balance due to the contractor nor use and occupancy of the premises (in this case a swimming pool) will constitute *an acceptance of work not done in accordance with the contract document* or relieve the contractor of liability or responsibility for faulty ma-

terials or workmanship. (All emphasis added.)

These provisions in these three Articles seemingly conflict with the provision in Special Conditions Art. 1.07 that the architect's decisions and estimates shall be final as to the acceptable fulfillment of the contract and the determination of the amount and quality of the work performed and materials furnished.

In this situation of conflict between provisions in the same contract, it is the duty of this Court to read, construe, and consider the contract within its four corners so that all of its provisions will be taken into consideration and construed together to give effect to all, if possible, and ascertain the meaning and effect of the contract. 13 Tex.Jur.2d 269, Contracts, Sec. 113, and the authorities cited therein. Thus considering the contract in its entirety, we hold it means that latent defects at the time the architect issued his final certificate of payment and accepted the premises, becoming evident after the one-year warranty contained in the contract and which could not have been discovered by the exercise of ordinary care, may be made the basis of a suit for damages on account of such defects. See Ann. 54 A.L.R. 1266. The architect's final certificate is binding on all parties as to the actual physical final completion of the work in erecting the structure or making the improvement called for by the construction contract. Insofar as defects are concerned which are unknown and could not have been discovered by ordinary care, the four-year statute of limitations applies. City of Osceola v. Gjellefald Construction Co., 225 Iowa 215, 279 N.W. 590 (1938); Elliott Consolidated School District v. Busboom, 227 F.Supp. 858 (1964); 13 Am.Jur.2d 59, Building, etc. Contract, Sec. 55.

The case of American Employers' Ins. Co. v. Huddleston, 123 Tex. 285, 70 S.W.2d 696 (1934), was a suit by Huddleston against a contractor, Woodruff, and his surety, the insurance company, for damages resulting to plaintiff Huddleston from the failure to build the improvements in accordance with the building contract and also for the use of defective materials and faulty workmanship. Plaintiff recovered in the trial court, and the Court of Civil Appeals affirmed. This Court affirmed the judgments of both courts below. The defects were discovered within one year after the architect issued his final certificate, but the principle of law stated also applies to our case. In affirming, this Court said:

"We have, therefore, the case of a building not constructed, as to workmanship and material, according to contract, the defects in which were not known to the architect or owner, during construction, and discovered only after the owner had paid strictly according to the contract, in full. Simply stated, the owner paid for something which he did not get in the way of workmanship and material, and which he was entitled to under the contract. We think he is entitled to recover and is not estopped because, relying on the architect's certificate, he made the final payment; this because of the terms of the contract itself, above set forth."

That case discusses Arts. 20, 25 and 31 of the building contract, and they are substantially in the same wording as the contract in the case at bar.

Substantially the same result was arrived at in the case of Houston Fire & Cas. Ins. Co. v. Riesel Ind. Sch. Dist. (Tex.Civ.App., 1964), 375 S.W.2d 323, writ refused, n. r. e. That case is easily distinguishable from the case at bar, but the discussion of Arts. 20 and 25 announce correct principles of law which are applicable to our case. On rehearing that court quotes from the A. I. A. Standard Contract Forms and Laws, William Stanley

Parker and Faneuil Adams, pp. 38 and 39 as follows:

"It does not seem sound to read into this provision an intent to void the broad generalities of the immediately preceding clause, and the clear statement in Article 25 that 'no certificate issued nor payment made * * * shall be an acceptance of any work or materials not in accordance with this contract.' The statute of limitations in a given state would determine the duration of the contractor's responsibility under this broad provision. There would be no reason for the insertion of this provision in Article 25, nor the similar provision in Article 20, if the intention were to limit the contractor's responsibility for defects to the one year period named in Article 20. It seems more reasonable to interpret the provision requiring correction of defects appearing within a year as constituting a specific contractual liability that would be covered by a guaranty bond which would cease to be in effect long before the end of the period established by the statute of limitations."

We approve of this reasoning.

It follows from what we have said above that the trial court was in error in granting summary judgment in favor of the contractor, and likewise the Court of Civil Appeals erred in affirming that judgment.

The City's cause of action against the surety is severed out, and we affirm the judgments of both courts below in favor of the surety, Travelers Indemnity Company. We reverse the judgments of both courts below in favor of the contractor, and that cause is remanded to the trial court for a trial on the merits. One-third of the costs are assessed against the City of Midland and two-thirds against the contractor, Leonard E. Waller.