**TRANSAMERICA INSURANCE
COMPANY, Appellant,**

v.

**HOUSING AUTHORITY OF The CITY
OF VICTORIA, Texas, Appellee.**

**No. 13–82–385–CV.**

Court of Appeals of Texas,
Corpus Christi.

March 29, 1984.

Rehearing Denied April 26, 1984.

Dayton G. Wiley, Cornel W. Walker, Wiley, Garwood, Stolhandske & Simmons, San Antonio, for Transamerica Insurance Co.

Kenneth Sharber, Law Office of Windle Turley, P.C., Dallas, for Victoria Housing Authority.

O. F. Jones, III, Victoria, Douglas M. Kennedy, Brin & Brin, Corpus Christi, for Campbell Construction Co.

Charles R. Shaddox, San Antonio, for appellee.

Before BISSETT, KENNEDY and GONZALEZ, JJ.

## OPINION

BISSETT, Justice.

This is a suit arising out of a public construction contract. The Housing Authority of the City of Victoria, Texas, hereafter "the Housing Authority," in a petition filed on July 30, 1979, sought damages from Transamerica Insurance Company, Bruce Campbell & Son Construction Co., Inc., and others, for alleged construction defects arising out of a contract for the renovation of public housing in the City of Victoria, Texas. The case was submitted to the jury on special issues. Certain answers by the jury, which we do not discuss in this opinion, were disregarded by the trial court as being immaterial, but based on the jury's answers to the remaining issues, judgment was rendered that the Housing Authority recover jointly and severally from Bruce Campbell & Son Construction Co., Inc. (the contractor for the allegedly defective construction), hereafter "Campbell," and Transamerica Insurance Company (the surety on the performance bond given by Campbell), hereafter "Transamerica," actual damages in the amount of $384,323.00, $66,000.00 in attorney's fees through the trial of the case, and $20,000.00 "for further attorney's fees" after the trial. The additional attorney's fees were subject to remittitur, in part or total, depending on whether there were appeals from the judgment to the appellate courts.

In addition, judgment was rendered that Transamerica recover from Campbell the sum of $384,323.00, "for actual damages, and the further sum of $39,000.00 for attorney's fees for services rendered through the trial of this case, and the further sum of $18,000.00 for further attorneys' fees incurred after the trial of this cause," with

provisions for remittitur if Campbell did not appeal the judgment. Campbell has not appealed. Only Transamerica has perfected an appeal from the trial court's judgment. Campbell, however, has filed a brief in this Court wherein it assumes the posture of an appellee in response to Transamerica's twenty-sixth, twenty-seventh and twenty-eighth points of error. We do not reach those points of error in this appeal.

On July 1, 1974, the Housing Authority, as the owner, and Campbell, as the general contractor, entered into a construction contract for the repair and modernization of three housing projects owned by the Housing Authority and for the construction of a new community building, which was also a public building. The original contract price was $871,300.00. Transamerica issued a performance bond in favor of the Housing Authority, sometime referred to as "LHA" in the contract documents, in the amount of the original contract price.

On August 4, 1975, the Housing Authority occupied the projects, and a "Certificate and Release" was executed by Campbell to the Housing Authority. Also, on the same day, a "Certificate of Completion" was signed by the Housing Authority's architect, Robert V. Buck, by the Housing Authority and by Campbell, which stated that the work was completed as of August 4, 1975, with the exception of certain "punch list" items in the amount of $10,200.00. Campbell was subsequently paid all sums owing under the contract except for $5,000.00.

The punch list items consisted of dirt work of $1,000.00, paving work of $4,600.00, exterior paneling of $4,400.00, and shelving of $200.00. At the time the Certificate of Completion was executed, the Housing Authority had withheld, as retainage, the sum of $54,774.00 as called for in the contract documents. The Housing Authority, the architect and Campbell agreed that the sum of $10,200.00 should be retained by the Housing Authority until completion of such punch list items, and that the remaining amount of $44,574.00 should be paid to Campbell. On August 20, 1975,

Campbell agreed to re-nail, as necessary, staples used in the construction of the roofs that needed re-nailing, and authorized the Housing Authority to retain an additional $1,000.00 until the staples were re-nailed, conditioned upon the latter's immediate payment to the former of the previously agreed upon sum of $44,574.00, less the additional $1,000.00 retention. After the staples had been re-nailed, the Housing Authority paid the agreed upon sum of $44,574.00 to Campbell. Thereafter, the Housing Authority paid an additional $5,200.00 to Campbell but retained the sum of $5,000.00. The final payment under the contract in the amount of $5,000.00 was never made to Campbell because of its failure to remedy certain construction defects in accordance with the provisions in the contract which required it to remedy defects occurring within one year after the Housing Authority's occupancy of the project.

Transamerica, in its second, third, fourth, sixth, seventh and eighth points of error, contends that the trial court erred in failing to grant it a directed verdict and in failing to withdraw the case from the jury and render judgment in its favor, because the action brought against it by the Housing Authority was barred by the one-year statute of limitations, as provided by TEX. REV.CIV.STAT.ANN. art. 5160 G (Vernon 1971).

The Housing Authority, in its brief, argues:

"1) The performance bond executed by Appellant (Transamerica) provided that suit must be instituted before the expiration of two (2) years from the date on which final payment fell due. This limitation period of two (2) years contained in the performance bond controls over the one (1) year limitation period provided in Article 5160.

2) Appellant (Transamerica) failed to submit an issue to the jury seeking a fact determination as to when 'final completion' of the contract occurred. Under Article 5160, the one (1) year limitation period begins to run upon 'final comple-

tion' of the contract. Even if the limitation period provided in Article 5160 is held to control over the terms of the bond, absent a fact determination by the jury as to when 'final completion' of the contract occurred, it is impossible to now determine if the one (1) year statutory period had expired before suit was filed. 3) The issuance by the architect of the Certificate of Completion was not, in this case, a conclusive determination that 'final completion' of the contract had occurred."

Article 5160 G, in relevant part, provides: "G.... No suit shall be instituted on the performance bond after the expiration of one (1) year after the date of final completion of such contract ..."

■ Article 5160 A (Vernon 1971), which was in effect when the subject contract was executed, required that any person who contracted with any governmental or quasi-governmental authority for the construction of public improvements to furnish a performance bond where the construction costs exceeded $2,000.00. In the instant case, the costs were greatly in excess of $2,000.00; therefore, a performance bond was required by the statute since the Housing Authority is a quasi-governmental authority. The bond stated suit must be instituted before the expiration of two years from the date when final payment became due.

The performance bond furnished by Transamerica is required by Article 5160 A, is in compliance with the provisions of that statute, and is a statutory bond. Any suit on the bond is subject to the one-year limitations period provided by Article 5160 G. "The statutory provisions [of Article 5160] governing recovery are mandatory as well as exclusive and provide the only procedure and remedy for presenting a claim against the bond." *City of San Antonio v. Argonaut Insurance Company*, 644 S.W.2d 90 (Tex.App.—San Antonio 1982, writ ref'd n.r.e.). *See also, Fidelity & Deposit Co. v. Big Three Welding Equip. Co.*, 151 Tex. 278, 249 S.W.2d 183 (1952).

We have not found any case which dealt with the situation where, in a public construction project, there was a conflict between the limitation period under Article 5160 G and the contractual limitation period set forth in a performance bond. However, the Supreme Court of Texas addressed a somewhat similar problem in *Sherwin-Williams Company v. American Indemnity Company*, 504 S.W.2d 400 (Tex.1974), where the payment bond in a *private* construction project presented a contractual limitation period which was in conflict with the statutory limitation period. There, a clause identical to the two-year limitation period contained in the bond furnished by Transamerica was upheld by the Supreme Court. However, in that case, the facts were different from those in this case. There, the trial court granted the bonding company a summary judgment on the ground that the limitation period of fourteen months provided by Article 5472d (the Hardeman Act) barred the suit against the surety as a matter of law. The Court of Civil Appeals affirmed the judgment of the trial court, but the Supreme Court reversed the judgments of the lower courts and remanded the case. The Supreme Court held that since the bond did not qualify as a statutory bond, it was error to hold that the claim, which was filed after the statutory period had expired but within the two-year limitation period provided for in the bond, was barred as a matter of law. The Supreme Court further held that "the two-year contractual limitation controls." The Supreme Court particularly noted that compliance with Article 5472d is "elective," while Article 6866, a statute which *required* a person who was elected sheriff to furnish a bond in a certain amount of money, is a statutory bond which is "required" of all persons taking office as sheriff.

The federal courts, where federal construction projects are involved, have generally held that the statutory limitation period prevails over conflicting bond provisions covering the time for filing suit on the bond. See 52 Tex.L.Rev. pp 1447, 1459 (1974).

■ Care must be taken not to confuse the statute of limitations applicable to *private* construction contracts with the statute of limitations applicable to *public* construction contracts. A contractor is *not required* to furnish a performance bond for private construction. He is, however, *required* to furnish a performance bond for a public construction project, where, in 1974, the construction costs exceeded $2,000.00 (now $25,000.00).

We hold that the instant case falls within the purview of Article 5160, which *required* that a performance bond be furnished in connection with the construction of the public improvements for the Housing Authority. Consequently the one-year period of limitations, as provided by Article 5160 G, controls, rather than the two-year period provided for in the bond.

■ Having determined that the one year statute of limitations, as provided by Article 5160 G, is applicable in this case, we must now determine when that time limitation expired. Under the statutory one year limitations period, suits on a performance bond must be brought within one year of the date of the final completion of the contract, *not* the date that final payment became due, or was, in fact, actually paid. This time frame may be extended by the existence of an agreement to remedy defects in workmanship that arise within a time period after the final acceptance. *Bayshore Constructors, Inc. v. Southern Montgomery County Municipal Utility District*, 543 S.W.2d 898 (Tex.Civ.App.— Beaumont 1976, writ ref'd n.r.e.). Here, Campbell agreed to remedy any defects due to faulty materials or workmanship which appeared within one year from the date of the Housing Authority's occupancy or use of the project. In construing a similar provision, the Court, in *Bayshore*, stated:

"We construe art. 5160 to mean that a person in the position of the District in this case has a full year to file suit after the one year 'remedy' period has elapsed .... The 'final settlement' date no longer is the important criteria, but the 'com-

pletion of the contract' is now the determining factor."

■ It is well settled that a surety on a performance bond is entitled to rely on the architect's Certificate of Completion as the final discharge of its duty on the bond because the architect is the agent or representative of the owner, and his representation is the representation of the owner. *City of Midland v. Waller*, 430 S.W.2d 473 (Tex.1968); *Boettler v. Tendick*, 73 Tex. 488, 11 S.W. 497 (1889). It is equally well settled that if the owner of the construction designates an architect (or other person) to supervise and approve the work performed, as is the case here, his decision is binding upon the owner, absent fraud or bad faith. *Carnegie Public Library Ass'n of Brownwood v. Harris*, 97 S.W. 520 (Tex. Civ.App.1906, writ ref'd); *See also First-Wichita National Bank v. Wood*, 632 S.W.2d 210 (Tex.App.—Fort Worth 1982, no writ); *Hooks v. Cook*, 345 S.W.2d 592 (Tex.Civ.App.—Houston 1961, writ ref'd n.r.e.); *First State Bank of Tensha v. Collinsworth*, 111 S.W.2d 309 (Tex.Civ.App.— Beaumont 1937, writ dism'd). Fraud or bad faith is not present in this case.

■ The extension of time provision in the contract relates only to the time frame for which the contractor agreed to remedy defects and not to a point in time, if ever, that the contractor actually made repairs for complained of defects, or was fully and finally paid. Normally, the contract would have been completed on the date the certificate of completion was accepted, which, in this case would have been August 4, 1975. *See City of Midland v. Waller*, 430 S.W.2d 473 (Tex.1968). However, even if the completion date was extended for an additional year to cover the period for which Campbell agreed to remedy discovered defects, the contract would have been finally completed on August 4, 1976, and limitations would have commenced to run from that date.

■ The Housing Authority's own expert testified that the construction of the improvements in accordance with the provi-

sions of the contract was substantially complete on August 4, 1975. It has been uniformly held that "substantial completion" of a construction contract is regarded, in legal parlance, as "full performance." *Del Monte Corporation v. Martin,* 574 S.W.2d 597 (Tex.Civ.App.—San Antonio 1978, writ ref'd n.r.e.); *Telles v. Vasconcelos,* 417 S.W.2d 491 (Tex.Civ.App.—El Paso 1967, writ ref'd n.r.e.); *Weissberger v. Brown-Bellows-Smith, Inc.,* 289 S.W.2d 813 (Tex.Civ.App.—Galveston 1956, writ ref'd n.r.e.); *Ditmar v. Beckham,* 86 S.W.2d 801 (Tex.Civ.App.—Fort Worth 1935, writ dism'd). It is conclusively shown by the record that "the date of final completion of the contract" was more than one year prior to the date the Housing Authority filed this suit. Therefore, that date did not have to be determined by the jury.

■ That certain monies were retained by the Housing Authority under the retainage provisions of the contract and subsequent agreements between the Housing Authority and that Campbell was not paid the final $5,000.00 are immaterial in determining the date when the contract was completed. The $5,000.00 item represents only slightly more than one-half of one percent (.0058) of the contract price, and the failure to pay this amount of money to Campbell should not be construed in a manner which will suspend the determination of the date when the contract was completed.

Since the Housing Authority did not file suit against Transamerica on the performance bond until July 30, 1979, and as there is nothing in the record which shows that the running of the statute was tolled, the cause of action asserted by the Housing Authority against Transamerica accrued more than one year after the contract was completed and the Housing Authority occupied the premises. The action was barred by the one-year statute of limitations under Article 5160 G. Transamerica's motion for a directed verdict should have been granted, and judgment that the Housing Authority take nothing against Transamerica should have been rendered. Transamerica's second, third, fourth, sixth, seventh and eighth points of error are sustained.

In view of our decision in this case, it is not necessary that we dispose of Transamerica's remaining points of error.

The judgment of the trial court insofar as it awarded a recovery of damages and attorney's fees to the Housing Authority of the City of Victoria, Texas, plaintiff in the trial court and appellee in this Court, against Transamerica Insurance Company, one of the defendants in the trial court and appellant in this Court, is REVERSED and judgment is here RENDERED that the Housing Authority of the City of Victoria, Texas, take nothing in its action against Transamerica Insurance Company. We do not disturb the remaining portions of the judgment. All costs of this appeal are taxed against the Housing Authority of the City of Victoria, Texas.

GONZALEZ, J., concurs with opinion in which KENNEDY, J., joins.

GONZALEZ, Justice, concurring.

■ I concur with the result. However, I disagree that as a matter of law, Article 5160 G (Vernon 1971) controls. The parties had a right to extend the limitations period and they contracted for a two year limitations period. Nonetheless, even under the two year period of limitations, appellee's suit is still barred for the reasons stated in the majority opinion.

KENNEDY, J., concurs.