FIRST-WICHITA NATIONAL BANK,
Trustee, Appellant,

v.

Jerry WOOD, d/b/a Sandra Gail Homes
and Sandra Gail Homes, Inc.,
Appellee.

No. 18651.

Court of Appeals of Texas,
Fort Worth.

April 22, 1982.

Sherrill & Pace and James B. Williamson,
Wichita Falls, for appellant.

Elmer H. Parish, Wichita Falls, for appellee.

Before MASSEY, C.J., and SPURLOCK
and JORDAN, JJ.

OPINION

JORDAN, Justice.

First-Wichita National Bank, Trustee, appeals from an adverse judgment in a suit

brought by appellee Jerry Wood, d/b/a Sandra Gail Homes and Sandra Gail Homes, Inc., for damages as a result of an alleged breach of a remodeling contract entered into by the parties. For convenience sake appellant will be referred to as "Trustee", the beneficiaries of the trust administered by the Trustee will be referred to as the "Burdens", and appellee will be termed the "Contractor".

The appeal is brought on twenty-four alleged points of error, only a few of which will be discussed in disposing of the appeal. The remaining points which will not be discussed are considered moot in view of our decision on what we consider the primary points.

We reform the judgment to include $2000.00 additional attorneys fees for this appeal and as reformed, we affirm.

Appellant bank is trustee of various trusts of which members of the Burden family of Wichita Falls are beneficiaries. The Burden's family home in Wichita Falls was virtually destroyed on April 10, 1979 by the tornado which struck that city on that day. The trustee entered into a remodeling and rebuilding contract with Contractor, appellee herein, as evidenced by a letter agreement dated May 3, 1979, for the repair and restoration of the Burden home.

The trustee Bank designated one Mel Breegle, who had *built* the Burden house originally, to act as the representative of the Bank and the Burdens in the actual daily overseeing of the work on the above structure. The letter agreement of May 3, 1979, between Trustee and Contractor, which denotes the contract existing between these parties, also stated that the contractor will provide Mr. Breegle with monthly statements showing detail of all expenditures, and that Breegle would then forward same to the Bank for final approval and payment on a monthly basis. The work was to be done "in a good and workmanlike manner and in compliance with all applicable building conditions and regulations."

By another letter of May 3, 1979 from the Trustee to Mel Breegle, the designated representative of Trustee, Breegle was advised that he was to supervise the rebuilding of the Burden residence, for a fee of 5% of the total compensation paid to Contractor. The letter also stated that Breegle "was to act as a representative of the Bank and Burden family in this rebuilding process . . . and to *supervise* Jerry Wood's (contractor's) rebuilding of the residence as detailed in our Letter Agreement with Jerry Wood . . . ."

The rebuilding work proceeded until sometime in August, 1979, when the Burdens complained of the prices the Contractor was paying for material purchased from Breegle and also complained of some of the labor and materials furnished by the Contractor. Breegle resigned as the Trustee's representative, because of these complaints, and the Trustee, by telegram, then terminated the services of the Contractor. On August 14, 1979 Trustee wrote Contractor to the effect that "*at that time while considering the work necessary to bring the work already completed up to the desire of the Burdens, we would be able to make a final accounting in regard to the rebuilding project.*" (Emphasis ours.)

Shortly thereafter a representative of the Trustee met with Contractor and offered the sum of $6200.00 in final settlement of the Contractor's claims for reimbursement for labor and materials furnished for which payment had not been made. Contractor claims that this offer, which he accepted, was in final settlement of all claims and that that agreement resolved and settled the entire dispute between the parties. Trustee, on the other hand, denies this, and claims that the $6200.00 offer was just in settlement of the Contractor's claim and did not encompass or include claims later made by Trustee against Contractor.

Suit was brought by Contractor against the Trustee for damages for alleged "wrongful" termination of the contract and the breach of the agreement or contract of settlement by which Trustee was to pay Contractor $6200 in settlement of all claims. Trustee answered with denials of those claims and a counterclaim based upon certain representations and warranties made

in the letter agreement dated May 3, 1979, and for damages resulting from grossly inferior quality of workmanship and materials furnished by Contractor. The counter-claim also included a very general and broad allegation that because of misrepresentations and breach of warranty the counter-claimant, Trustee, was entitled to treble damages under sec. 17.50(b), Texas Business and Commerce Code.

In answering special issues submitted by the court the jury found: (1) (Issue No. 2) that Trustee appointed Mel Breegle as representative of Trustee in the performance of the contract between Trustee and Contractor; (2) (Issue No. 3) that Breegle approved the performance of Contractor under the contract until Breegle resigned as representative on August 3, 1979; (3) (Issue No. 5) that the materials and labor furnished by Contractor under the contract were substantially performed to date of termination; (4) (Issue No. 6) that a balance of $3420.03 was due Contractor by Trustee for the substantial performance to date of termination; (5) (Issue No. 8) that Contractor did not fail to furnish the labor, materials and supervision necessary to restore the Burden home as to the work performed to date of termination, but Contractor did fail to perform the work in a good and workmanlike manner to date of termination; however, in answer to Special Issue No. 9 the jury found that such failure did not proximately cause the Burden Trusts to incur expenses for repairs; (6) (Issue No. 10) that Contractor did not represent that the repair and reconstruction work would be of a particular standard, quality or grade, when it was of another standard, quality or grade, by agreeing to furnish labor, materials and supervision necessary to rebuild the Burden house in as near as practical to its condition in 1962, as to work performed to date of termination; but in part (b) of Issue No. 10 the jury found that Contractor did, by agreeing to do all work in a good and workmanlike manner to the date of termination, represent that the repair and reconstruction work would be of a particular standard, quality or grade, when it was of another standard, quality or grade; (7) In

answers to Issues 11 and 12 the jury found that the failure of Contractor to perform the work in a good and workmanlike manner to date of termination caused the Burden Trusts to expend the sum of $6369.37 to reasonably and necessarily correct the work performed by Contractor; (8) (Issue No. 13) the jury found that Contractor and the Trustee, acting through its officer Jerry Ritter, agreed that Trustee would pay Contractor the sum of $6200.00 in final settlement of Contractor's claim.

After verdict, the trial court overruled Trustee's motion for judgment based on the jury's answers to Special Issues Nos. 10b, 11b and 12, granted Contractor's motion to disregard those jury answers, and granted appellee-Contractor's motion for judgment non obstante veredicto based apparently on the jury's answers to Issues Nos. 2, 3 and 13. The court then rendered judgment in favor of Contractor for the sum of $6200.00, the amount of the agreed settlement, plus attorneys fees of $9900.00.

In taking these actions, we hold the trial court was correct.

In the first ten points of error, Trustee complains of the trial court's granting Contractor's motion to disregard the answers to Special Issues Nos. 10b, 11b and 12 for the reason that there was sufficient evidence to support said answers of the court's failing to grant Trustee's motion to disregard the answer to Special Issue No. 2, and in submitting Issues Nos. 2 and 3 to the jury because both were questions of law that should have been decided by the court.

We think the answers to Trustee's contentions in these first ten points of error are found in Contractor's exhibits nos. 1 and 6, the letter from Trustee to Contractor Jerry Wood dated May 3, 1979 and the letter from Trustee to their representative Mel Breegle also dated May 3, 1979, as well as the testimony of Breegle, Jerry Ritter, the Trustee's vice-president and trust officer of the Trustee, First-Wichita National Bank, and of Jack Burden, one of the beneficiaries of the trust.

That evidence convinces us that Mel Breegle was appointed by the Trustee to oversee and supervise the reconstruction work done by Contractor, that he did have Trustee's permission and authority to finally approve the work of the contractor on behalf of Trustee, and that Breegle in fact did so approve the labors, materials and workmanship furnished by Contractor, and that such approval was binding on Trustee.

As we have already noted, the May 3, 1979 letter from Jerry Ritter, Vice-President and Trust Officer of Trustee Bank, in a letter agreement approved both by him and by Contractor, stated that "*Mel Breegle will act as a representative of the Bank and the Burdens in the actual daily overseeing of the work on the above structure. You will provide Mr. Breegle with monthly statements showing detail of all expenditures. He will forward same to the Bank for final approval and payment on a monthly basis.*" (Emphasis ours). The May 3, 1979 letter from Ritter to Mel Breegle read in part as follows: "This letter will evidence our understanding that you will supervise the rebuilding of the residence at the captioned address. For said supervision you will receive five per cent (5%) of the total compensation to Jerry Wood, d/b/a Sandra Gail Homes, said compensation to be paid on the completion of the job by Jerry Wood with the approval of the Bank and Burden family. *You further agree to act as a representative of the Bank and Burden family in this rebuilding process. You are to supervise Jerry Wood's rebuilding of the residence as detailed in our Letter Agreement with Jerry Wood, a copy of which is attached hereto. Any major changes to the above will be made only with the approval of the Bank and the Burden family.*" (Emphasis ours).

Ritter, the trust officer, testified "we were not actually involved in looking at the work because that was what we felt Mel Breegle was doing." He further testified that Breegle was the bank's representative in passing on the work and "we had contracted to him to oversee the job, and that's what we felt like he was doing or we hoped he was doing." Ritter also said that Mel Breegle approved the work performed by Jerry Wood, the contractor.

The Trustee's representative, Breegle, testified that: (1) he checked on the work done and in his opinion the work performed by Jerry Wood was satisfactory; (2) *that the work performed by Jerry Wood was good and workmanlike work*; (3) *that the materials furnished were of very top quality and the workmanship was of like quality*; and (4) that he was thoroughly familiar with the work performed and the materials, labor and workmanship was all adequate.

Jack Burden, one of the beneficiaries of the trusts, testified that he complained to Mel Breegle about the workmanship and materials, but never complained to Jerry Wood, and *that Mel Breegle was their supervisor.* When asked if he made any complaint to Jerry Wood, Burden testified, "*No, sir, I honored the line of the chain of command so to speak that was established with our contract.*" He explained that Breegle "filled in to be his eyes and directive" in the rebuilding project.

It is appellant-Trustee's contention that the authority given Breegle by Trustee was simply to oversee and check on the work, but did not include authorization for Breegle to finally approve and sanction Contractor's work. We disagree with this contention. From the evidence recited above, including the two letters of May 3, 1979 and the testimony of Ritter, Breegle and Burden, as well as other testimony, it is clear that if the letters did not expressly grant to Breegle the final authority to approve Contractor's work, certainly that was the intent of the parties in making this letter agreement of May 3, 1979. Ritter, the Trust Officer of the bank, specifically said that neither he nor anyone else at the bank was involved in looking after the work because that was what they had hired Breegle for. He said very plainly that Breegle was the bank's representative in passing on the work. Breegle was the agent for the bank in overseeing, supervising and approving the work of Contractor.

Most of the cases dealing with the subject of an agent's authority to pass final approval on construction work are cases involving architects. All of these cases hold that if the contract designates an architect, or other person, to supervise and approve the work, in the absence of fraud or bad faith, his decision is binding on the principal and is a waiver of all defects and of the principal's right to defend the action of the contractor or builder to recover the contract price. See *Collier v. Betterton*, 8 Tex.Civ. App. 479, 29 S.W. 490 (1894, writ den'd.); *First State Bank of Tenaha v. Collinsworth*, 111 S.W.2d 309 (Tex.Civ.App. Beaumont, 1937, writ dism'd.); *Hooks v. Cook*, 345 S.W.2d 592 (Tex.Civ.App. Houston, 1961, writ ref'd. n. r. e.); *Croft v. Cohen Lumber & Building Co.*, 107 S.W.2d 1040 (Tex.Civ. App. Galveston, 1937, writ dism'd.); *Carnegie Public Library Ass'n of Brownwood v. Harris*, 43 Tex.Civ.App. 165, 97 S.W. 520 (1906, writ ref'd.); *John Maynard Lumber Co. v. Brazell*, 28 S.W.2d 877, 881 (Tex.Civ. App. Amarillo, 1930).

We hold that under the evidence in this case and the authorities cited above, when Mr. Breegle approved the Contractor's work, his approval was binding on the bank and the Contractor's bill for labor and material furnished to date of termination of Contractor should have been paid. Ritter admitted that at least at one time he had inspected the reconstruction work prior to termination of the Contractor, so if there were any defects in workmanship or materials prior to termination of the Contractor, they were known to Trustee, who made no complaint about either workmanship or materials until he filed his answer and counterclaim after Contractor filed suit to collect the moneys due him. Any complaint about defects was waived, and Special Issues Nos. 8 through 11 should not have been submitted to the jury.

Appellant-Trustees points of error one through ten are overruled.

■ Appellant-Trustee presents points of error eleven through nineteen complaining of the submission of Issue No. 13, to which the jury found that Trustee had agreed to pay Contractor the sum of $6200.00 in full and final settlement of Contractor's claim. It is Trustee's position that the record indicates that the trial court based his judgment non obstante veredicto on his disregarding Issues 10b, 11b, and 12, about which he complains in points of error one through ten. He contends, however, that in the event the trial court based his judgment non obstante veredicto on the jury's answer to Issue No. 13, that he erred in so doing. We think, as we have earlier indicated, that the court was correct if he did base his judgment on the answers to Special Issues Nos. 2 and 3, for the reasons stated. In this event, it was not necessary to submit Issue No. 13 on the settlement between the parties. However, we hold that under the evidence in this record Special Issue No. 13 was properly submitted and the answer thereto is well supported by the evidence.

After Trustee terminated the services of Contractor, Ritter, the bank's Vice-President and Trust Officer, wrote Contractor, by letter of August 14, 1979, requesting Contractor to send a final bill and stated therein "*at that time, while considering the work necessary to bring the work already completed up to the desires of the Burdens, we would be able to make a final accounting in regard to this rebuilding project.*" (Emphasis ours). Ritter testified that he knew before the letter of August 14, 1979 that the Burdens were dissatisfied with the work and that it would take something to bring it up to their satisfaction. Ritter further testified that sometime during the first part of September, 1979 he did meet with Contractor and agreed to settle the building project for $6200.00, although the final bill submitted by Contractor was $7038.97, and that Contractor agreed to such settlement. Contractor testified that although $6200.00 was less than the agreed amount due him under his contract, he agreed to accept $6200.00 and "settle up everything." Ritter also testified that at the time he agreed to pay Contractor $6200.00 it was for a final accounting.

No mention, up to the time of this settlement, had ever been made of any defects in

the work or materials, or that Contractor owed Trustee and the Burdens anything. We think the agreement of early September, 1979, between Trustee and Contractor was a compromise and settlement of the entire bill due Contractor and also of any claims Trustee or the Burdens may have thought they had at that time. The matter was closed and the jury in answering Special Issue No. 13 so found.

Appellant-Trustee's points of error eleven through nineteen are overruled.

Trustee's points of error twenty through twenty four contend that Issue No. 7 on the number of hours spent by Contractor's attorney in the preparation and trial of the lawsuit was improperly submitted because no notice of the demand for payment of Contractor's claim was timely made, that attorney's fees are not recoverable in this suit involving a "special contract", and that the attorney for Contractor failed to separate the amount of time and work he spent on Contractor's claim against Trustee and that spent in defense of the counterclaim lodged against Contractor by Trustee. None of these points are well-taken.

█ Contractor's attorney, Elmer Parrish, a veteran, able lawyer, testified at length as to the time and work he had spent on this entire case, both on the primary suit and in defense of the counterclaim. All of this evidence came in without a single objection, either as to lack of demand for payment of the Contractor's claim so that attorney's fees could be recovered under art. 2226, as to attorney's fees not being recoverable in a "special" contracts case, or that the attorney's work in the primary suit and defense of the counterclaim had not been separated. *Lyles v. State*, 171 Tex. Cr.R. 468, 351 S.W.2d 886 (1961); *Mayfield v. Employers Reinsurance Corp.*, 539 S.W.2d 398 (Tex.Civ.App.-Tyler 1976, writ ref'd. n. r. e.). Trustee's counsel did object to the submission of Issue No. 7 on two of these three grounds, but did not object to the charge on the ground that attorneys fees could not be recovered under art. 2226 because this was a "special contract." That objection, therefore, was waived, under

Rule 274, Texas Rules of Civil Procedure. Moreover, it is clear from this entire record that this was a suit for personal services and for goods and materials furnished, and thus was certainly amenable to recovery of attorney's fees.

█ With regard to Trustee's contention that the attorney failed to distinguish between the time and work spent on Contractor's suit and on defense of the counterclaim, we point out that Mr. Parrish did testify without objection, as to the total amount of hours he spent, and some of that testimony referred to time and effort expended on both the primary suit by Contractor and in defense of Trustee's counterclaim. Such a separation of the work involved on these two matters was not necessary; the preparation and trial work was really on one lawsuit and was more or less inseparable, most of the work done by Mr. Parrish having been necessary for both prosecution and defense. *Damstra v. Starr*, 585 S.W.2d 817 (Tex.Civ.App.1979); *Wilkins v. Bain*, 615 S.W.2d 314 (Tex.Civ.App.-Dallas, 1981).

Trustee's points of error twenty through twenty-four are overruled.

Since the parties stipulated that the sum of $2000.00 would be added to the attorney's fees recoverable by Contractor in the event of an appeal to the Court of Appeals, we reform the judgment so as to include therein the stipulated $2000.00 attorney's fees, in addition to the $9900.00 recovered originally in the trial court. As reformed, the judgment is affirmed.