**Charles D. CROW d/b/a Indian Mound Fisheries, Appellant,**

v.

**CENTRAL SOYA COMPANY, INC., Appellee.**

No. 2–82–088–CV.

Court of Appeals of Texas, Fort Worth.

May 5, 1983.

Rehearing Denied May 26, 1983.

C. Dan Campbell, Wichita Falls, for appellant.

Lawrence Teis, Graham, for appellees.

Before HUGHES, JORDAN and BURDOCK, JJ.

## OPINION

JORDAN, Justice.

Suit was brought on a sworn account by Central Soya Company, Inc., hereinafter referred to as "Soya", against Charles D. Crow, d/b/a Indian Mound Fisheries and hereinafter referred to as "Crow", for amounts alleged to be due on the sale of fish feed sold by Soya to Crow. By way of answer and counterclaim, Crow alleged that the feed in question was not merchantable and had in fact resulted in damage to Crow's fish crop. Crow asked for treble damages pursuant to the Deceptive Trade Practices Act. Although trial was had before a jury which found that the feed sold by Soya to Crow was not merchantable and that Crow suffered resultant damages in the amount of $17,500.00, the court refused to enter a judgment for Crow, and instead held that both parties should take nothing on their claims against the other. Both

appellant Crow, by points of error, and appellee Soya, by way of cross points of error, challenge the judgment of the court below.

We affirm in part and reverse and render in part.

The evidence is uncontroverted that Crow purchased from Soya "Master Mix" catfish feed valued at $4,951.45, but refused to satisfy Soya's demand for payment. In defense of Soya's claim against him, and, in support of his contention that the feed in question was unmerchantable and had damaged his fish crop, Crow testified that he raised his 1978 fish crop on "Master Mix" feed which had been recommended and sold to him by Soya. The evidence showed that by the time the "stocker" fish which had been fed "Master Mix" had reached maturity, they weighed only ½ pound on the average. Further evidence showed that the "Master Mix" feed only contained 1% fish meal protein while the experts who testified said that there is a correlation between the amount of protein in the diet of fish and their growth and that a catfish feed sold for the purpose of putting weight on fish such as the ones raised by Crow should have contained from 5 to 12% fish meal. Crow stated that there was nothing unusual about the 1978 growing season for catfish and that under these conditions, his experience showed that the same fish which came to weigh only an average of ½ pound at harvest time should have weighed from 2 to 2–½ pounds on the average. There was also testimony from experts that the 1% fish meal administered at the recommended rate to fish would tend to have the effect of maintaining a stable weight but would not tend to increase the size of the fish as would a feed containing more fish meal protein.

By way of his first three points of error, Crow contends that the court erred in ignoring the jury verdict in his favor and in rendering a take nothing judgment on his counterclaim for the reason that there was sufficient evidence adduced at trial to support the jury's finding of unmerchantability of the feed and the damages resulting therefrom. While we agree with Crow that the evidence was sufficient to show that the feed was not suited for the purpose of fattening catfish for commercial sale, we do not find that Crow proved that he was adversely affected by such breach of warranty. The proper measure of damages applicable here is described in the case of *Rotello v. Ring Around Products, Inc.*, 614 S.W.2d 455 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.). *Rotello* cites the case of *International Harvester Company v. Kesey*, 507 S.W.2d 195 (Tex.1974) for the proposition that in such a case the proper measure of damages is the market value of the probable yield of the damaged portion of the crop, less the unincurred expenses of cultivating, harvesting and marketing the damaged portion of the crop. Although we feel that there was sufficient evidence from which the jury might have found the probable yield of the damaged catfish crop, we find no evidence which would show how small or large Crow's unincurred expenses would have been. While Crow refers us to his testimony that he had already paid all the costs of "raising" his catfish crop, we do not find that such evidence goes to prove the cost of harvesting and marketing as *Rotello* requires.

The evidence establishes that Crow abandoned the 1978 harvest and absent any evidence of the amount of money saved by so doing, the jury could not have based a conclusion on Crow's actual loss upon anything other than mere surmise or conjecture. From the evidence adduced at trial there is simply no evidence as to how much loss, if any, Crow suffered. Crow's points of error numbers one through three are overruled.

Because we find that there was no evidence to support an essential element of Crow's alleged damages, we uphold the portion of the judgment whereby the court ordered that Crow take nothing from Soya. Because we find there was no evidence to support Crow's claim for damages, we decline to discuss Crow's remaining points of error except for points of error six through eight, as our no evidence finding applies to them. These final three points of error complain that the court erred in imposing

sanctions for failure to produce certain documentary evidence pursuant to Soya's motion to produce. Crow complains that the sanction, which prohibited the introduction of these documents at trial by Crow in support of his case, constituted an abuse of discretion because the documents were produced according to an agreement between the parties, and because the sanctions were imposed without notice or hearing.

■ In brief summary of the background of the sanctions, Soya filed a motion for sanctions which alleged that Crow promised to provide Soya with certain records in answer to questions asked of Crow and Crow's wife at the taking of depositions. The records were alleged by Crow to be relevant to inquiries regarding the operation of the fishery. Having received no records as of December 31, 1981, and trial having been scheduled and eventually held on January 18, 1982, Soya filed a motion for production. The records were then delivered to Soya, but not until January 15, 1982. This was on a Friday afternoon, less than three full days before trial. The relevant documents were delivered in a box, buried among what Soya contended were thousands of other papers and entries. The motion for sanctions was made on the day of trial and were imposed after a hearing on the motion at which counsel for both parties were present. The record discloses that at the close of all evidence at trial, Crow presented a bill of exceptions to the court's order prohibiting the introduction of the business records which were delivered to Soya on the afternoon of January 15. Because we have held that there was no evidence of Crow's unincurred harvesting and marketing expenses, an essential element of Crow's alleged damages, and that the court was correct in ordering that Crow take nothing for that reason, we limit our review of possible error resulting from the imposition of the sanctions to the question of whether or not these documents contained any evidence which would go to prove unincurred expenses. Our review of Crow's bill of exceptions regarding the contents of the documents in question discloses no such evidence. We therefore conclude that even if we were to find error in the imposition of the sanctions by the court, the evidence would still fail to prove the facts necessary for sustaining a verdict for Crow. Points of error six through eight are overruled.

■ Having found no error in that portion of the judgment whereby the court ordered that Crow should take nothing by way of its claim against Soya, we now turn to error which the court allegedly committed in ordering that Soya take nothing from Crow on its suit on a sworn account as raised by appellee Soya's cross points of error. Soya's cross point of error number one asks this court to find that the trial court committed error in failing to grant Soya's motion for directed verdict. As Soya points out in its brief, the record affirmatively establishes that Crow incurred the debt in question and refused to pay. Both the existence of and the amount of the debt was stipulated to by Crow's attorney at trial and it was freely admitted by Crow that he had not paid his bill to Soya since it became due. Soya's motion for instructed verdict specifically asked for judgment on the ground that the obligation on Crow's part was not in question and that Crow's failure to prove any damage from the use of the feed purchased from Crow defeated his only defense to Soya's claim. Having affirmed the take nothing judgment against Crow on the grounds that Crow failed to provide any proof of an essential element of damages, we sustain Soya's first cross point of error and reverse that portion of the judgment which held that Soya should take nothing against Crow on the unpaid feed bill.

The final question raised by Soya's cross point of error, which merits discussion, concerns attorney's fees. Soya's cross point number four alleges that the court erred in not entering judgment for Soya for attorney's fees which were requested in its pleading under Tex.Rev.Civ.Stat. Ann. art. 2226 (Supp.1982). At trial, Soya's attorney testified as to the number of hours spent in preparation of the suit on a sworn account and in defense of Crow's counterclaim stat-

ing that $7,500.00 would be a reasonable amount for the work done. The jury, in response to a special issue on the question of Soya's attorney's fees found that the reasonable fee in this case amounted to $7,500.00 for services connected with trial of the case, $3,500.00 for appeal to the Court of Appeals, $1,500.00 for application for writ of error to the Supreme Court and another $1,000.00 should writ be granted.

Although we have sustained Soya's cross point of error number one by holding that the court below erred in failing to award Soya judgment on its suit on a sworn account, we do not find that Soya is entitled to attorney's fees. Although art. 2226 provides for an award of attorney's fees in suits such as this one, brought by Soya against Crow, fees attributable to the defense of a counterclaim are not recoverable unless the facts necessary for the plaintiff to recover also serve to defeat the counterclaim. *Wilkins v. Bain,* 615 S.W.2d 314 (Tex.Civ.App.—Dallas 1981, no writ). Soya's action against Crow was based on the undisputed fact that Soya provided goods to Crow at Crow's request and that payments due on the account were never made. These facts simply do not go to defend Crow's claim based on the Deceptive Trade Practices Act. *See Bray v. Curtis,* 544 S.W.2d 816 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.), where it was held that the operator of a towing service who prevailed on a suit for services rendered could not recover attorney's fees for that portion of the attorney's time devoted to defending a counterclaim based on the Deceptive Trade Practices Act. At trial, Soya's attorney testified as to the total number of hours spent on the case but was unable to testify as to how many of those hours were spent on the suit on the sworn account for which attorney's fees are recoverable under art. 2226. The special issue on attorney's fees went to the question of total hours spent on the suit as a whole and was not limited to the question of those hours spent on the prosecution of the sworn account against Crow. There was also no evidence going to the total hours spent by Soya's lawyers on the prosecution of the

sworn account as segregated from the hours spent on the defense of the cross-claim. Because of these reasons we hold that the court was correct in refusing to award attorney's fees based on the answer to the special issue as it was presented to the jury. Soya's cross point of error number four is overruled.

Having disposed of all of Soya's claims against Crow by our rulings on Soya's cross points of error number one and four, we find discussion of Soya's other cross points of error to be unnecessary.

That portion of the judgment ordering that Crow take nothing on his counterclaim against Soya and that neither party be awarded attorney's fees is affirmed. That portion of the judgment ordering that Soya take nothing on its claim against Crow is reversed and judgment is rendered on Soya's behalf in the amount of $4,951.45. Costs are assessed against Crow.