**FLINT & ASSOCIATES, et al., Appellants,**

v.

**INTERCONTINENTAL PIPE & STEEL, INC., Appellee.**

No. 05–86–00375–CV.

Court of Appeals of Texas, Dallas.

Oct. 6, 1987.

Rehearing Denied Nov. 6, 1987.

Robert M. Thornton, Dallas, for appellants.

Jack Pew, Jr., Michael L. Knapek, Dallas, for appellee.

Before STEPHENS, HECHT and BAKER, JJ.

HECHT, Justice.

Appellants complain only of the district court's award of attorney fees and costs. The principal issues are:

—Whether legal fees incurred in prosecution of the claim properly included those incurred in the defense of a related counterclaim;

—Whether the district court properly reduced the award of legal fees to exclude those incurred in the prosecution and defense of unrelated claims;

—Whether the attorney fees award is excessive; and

—Whether the district court properly allowed recovery of expenses.

We find no error in the district court's award of attorney fees but reverse the legally unfounded award of expenses.

I

Intercontinental Pipe & Steel, Inc. sold Flint & Associates, and J.A. Flint, Donald Flint and Douglas Flint, d/b/a Flint & Associates, oil field production casing for use in completing an oil well. The Flints refused to pay for the pipe, claiming that it was defective.

IPS sued the Flints for the purchase price of the pipe. Anticipating the Flints' response, IPS also sought a declaratory judgment that it was not liable to the Flints for any consequential damages claimed as a result of the use of the pipe. IPS joined four additional defendants that it alleged were liable to the Flints for any consequential damages the Flints might claim, and asserted contribution and indemnity claims against them for any damages the Flints recovered against IPS. Two of the four cross-claimed back against IPS.

The Flints denied IPS' claim and, just as it had expected, counterclaimed against IPS for damages resulting from the use of the pipe, and statutory damages under the Texas Deceptive Trade Practices–Consumer Protection Act. Specifically, the Flints alleged that because of defects in the pipe the well they installed it in could not be

completed, and as a result they incurred the expense of drilling a replacement well. In an accompanying cross-claim the Flints made the same allegations against two of the four additional defendants joined by IPS.

Jury trial lasted nearly four weeks. IPS offered brief evidence of the unpaid purchase price of the pipe and rested. After the Flints had rested their case in chief, IPS moved for an instructed verdict on its claim for the purchase price of the pipe. The Flints opposed the motion, arguing, for essentially the same reasons urged in the Flints' counterclaim, that IPS had not established its right to recover the purchase price of the pipe. Only after the close of all the evidence did the Flints admit liability to IPS for the purchase price of the pipe, and then only to gain the right to open and close the argument. The jury returned a verdict against the Flints on their counterclaim.

In accordance with the parties' pretrial stipulation, the issue of what amount of attorney fees IPS was entitled to recover was tried before the court after the verdict was returned. The attorney who had first represented IPS in the case, and IPS' trial counsel, both testified that it was impossible to segregate time spent in prosecuting IPS' claim from time spent in defending against the Flints' counterclaim. The Flints offered no evidence at the trial on attorney fees. The trial court found:

1. IPS was required to defend against Flint's counterclaim in order to prevail on its cause of action to recover the purchase price of the pipe.

. . . . .

5. The matters encompassed by IPS's claim and the Flint's [sic] counterclaim are indistinguishable, arose from the same transaction, and the same facts were required to prosecute the claim as to defend against the counterclaim, because the Flint's [sic] contended, throughout trial and until after the close of the evidence, that IPS's claim was not due and owing because the pipe was not fit for use in the Singer Brothers No. 1 well.

6. IPS's counsel, by necessity, spent no more time in preparation to defend against the Flint's [sic] counterclaim than was necessary to meet the Flint's [sic] defenses to the primary suit.

7. IPS's claim to recover the contract price for the pipe necessarily involved the same facts as the Flint's [sic] counterclaim to recover damages for the sale of defective pipe. The Flint's [sic] insisted, until after the close of the evidence, that no amount was due and owing on the pipe because the pipe was defective.

Based upon these findings the district court concluded that IPS was entitled to recover attorney fees both for prosecuting its own claim and defending against the Flints' counterclaim.

No right to recover attorney fees exists except by contract or by statute. *New Amsterdam Casualty Co. v. Texas Indus., Inc.,* 414 S.W.2d 914, 915 (Tex. 1967). In this case IPS bases its claim for attorney fees on article 2226, Texas Revised Civil Statutes Annotated,[1] which authorizes an award of attorney fees for the successful prosecution of an action for debt, like this one. The statute, however, does not allow recovery of attorney fees for defense of a counterclaim like the Flints'. As a rule, in a case involving more than one claim, attorney fees can be awarded only for necessary legal services rendered in connection with the claims for which recovery is authorized. *Int'l Sec. Life Ins. Co. v. Finck,* 496 S.W.2d 544, 546–547 (Tex.1973). The party seeking attorney fees must present evidence of a reasonable fee for only those services necessarily rendered in connection with the claim for which recovery of attorney fees is authorized, segregated from those services rendered in connection with other claims. *Id.* A corollary to the rule is that the services for which reasonable fees may be awarded include those rendered in connection with all claims, even if recovery of attorney fees is not authorized for such claims, if they arise out of the same trans-

---

1. This article has been recodified as Tex.Civ. Prac.Rem.Code Ann. § 38.001 (Vernon 1986).

action and are so interrelated that their prosecution or defense entails proof or denial of essentially the same facts. *Wilkins v. Bain,* 615 S.W.2d 314, 316 (Tex.Civ.App. —Dallas 1981, no writ); *Williamson v. Tucker,* 615 S.W.2d 881 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.); *Triland Inv. Group v. Warren,* No. 05–86–00225–CV (Tex.App.—Dallas, June 9, 1987) (not yet reported).

 The record in this case establishes the applicability of the corollary just stated. IPS' claim and the Flints' counterclaim both arose out of the same transaction, viz, the sale of pipe. The Flints' allegations that the pipe was defective were urged both in defense of IPS' claim for the purchase price as well as in support of their claim for additional damages. To recover on its claim, IPS was required to defeat the Flints' counterclaim. The Flints' argument that they elected at the outset to affirm the agreement to pay for the pipe and sue for damage to the well, evidenced, they say, by their not pleading rescission, ignores their steadfast denial of any liability to IPS until after the close of the evidence. The Flints' use of their counterclaim to defend against IPS' claim was obvious in their successful opposition of IPS' motion for instructed verdict on essentially the grounds of their counterclaim.[2]

The Flints argue additionally that IPS cannot recover attorney fees incurred in defense of their counterclaim because it did not meet the requirements of the Deceptive Trade Practices Act, on which the counterclaim was based in part. That Act authorizes recovery of attorney fees incurred in defense of groundless claims made in bad faith or for harassment. Tex.Bus. & Comm.Code § 17.50(c) (Vernon Supp.1987). Although IPS alleged that the Flints' counterclaim was groundless and brought in bad faith or for purposes of harassment, they did not obtain a finding of fact in

support of their allegation, and they did not claim a right of recovery under the DTPA at the trial on attorney fees. Nevertheless, the DTPA's authorization of attorney fees does not preclude recovery under article 2226. *First Wichita Nat'l Bank v. Wood,* 632 S.W.2d 210 (Tex.App.—Fort Worth 1982, no writ). Moreover, the Flints based their counterclaim not only on the DTPA but also on the common law.

Accordingly, we conclude that the district court did not err in including within the award of attorney fees to IPS fees incurred in defense of the Flints' counterclaim as well as those incurred in the prosecution of its own claim.[3]

## II

 The Flints complain that the district court erred in allowing IPS' trial counsel to opine as to a reasonable fee for all services rendered in the case, including services rendered in connection with IPS's claims against the four additional parties originally joined in the suit. The complaint is misdirected. The district court could not err in merely hearing evidence of a reasonable fee for all services rendered in the case, including services for which fees were not recoverable. The district court could err only in actually awarding fees for services which should have been excluded. The district court, however, made no such error.

The district court found:

2. IPS was not required to prosecute actions against parties other the Flint in order to prevail on its cause of action to recover the purchase price of the pipe.

3. The reasonable attorney's fees incurred by IPS in prosecuting its claim for the purchase price of the pipe, including defending against Flint's counterclaim but not including prosecuting any other

---

2. The Flints' counsel now argues that after IPS' motion for instructed verdict was denied he came to the realization that his statements in opposition to IPS' motion were "legally erroneous", and that he corrected his mistake by stipulating liability to IPS after the evidence was closed. This argument lacks credence because

it offers no explanation for why it took counsel nine days to realize his error, nor why his realization happened to coincide with his request to open and close argument.

3. In so doing we overrule the Flints' points of error 1–10, and 11–12 in part. See note 4 *infra*.

action against any other party, is the sum of $160,000.

Thus, the district court expressly excluded from its award fees for services rendered IPS in connection with claims by and against the other four parties originally joined in the suit. The fees awarded, $160,000, were thus reduced from the $172,000 fees requested for all services rendered in the case.

When attorney fees are to be found by the court without a jury, the court may determine a reasonable fee for legal services rendered in a case based upon its knowledge of usual and customary rates and its review of its own file, even if no other evidence is offered. Tex.Civ.Prac.Rem. Code § 38.004 (Vernon 1986); *Coward v. Gateway National Bank of Beaumont,* 525 S.W.2d 857, 859 (Tex.1975); *Ho v. Wolfe,* 688 S.W.2d 693, 697 (Tex.App.— Amarillo 1985, no writ). The court may, of course, take judicial notice of the contents of its file with or without the request of a party. Tex.R.Evid. 201(c). In this case the district court, at the express request of the Flints, took judicial notice of all claims that had been filed in the case in assessing its award. From its knowledge of those claims, as reflected in the record, the district court could determine what portion of the requested fees was reasonably attributable to services for which fees could not be recovered.

Accordingly, we conclude that the district court properly excluded from its award non-recoverable fees, notwithstanding the testimony of IPS' witnesses.[4]

### III

▉ The Flints complain that the award of $162,000 attorney fees in this case is excessive because the total actual damages recovered by IPS was $24,067.14. Although the fees awarded are nearly seven times the actual damages recovered, the award is not excessive.

The amount of recovery is but one factor to be considered in determining reasonable attorney fees in a case. Tex.Rev.Civ.Stat. Ann. tit. 14 app., Art. 10, § 9, DR 2–106(B); *Failing v. Equity Management Corp.,* 674 S.W.2d 906 (Tex.App.—Houston [1st Dist.] 1984, no writ). Another factor is the total amount involved in the case, which the Flints' claim was $525,000. *Magids v. Dorman,* 430 S.W.2d 910 (Tex.Civ.App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.). The determination of what is reasonable cannot be made by application of some mechanical formula. Rather, the court must take into consideration the entire nature of the case. *Commonwealth Lloyd's Ins. Co. v. Thomas,* 678 S.W.2d 278 (Tex.App.—Fort Worth 1984, writ ref'd n.r.e.). The Flints, not IPS, transformed this case from a simple suit on account to a four-week DTPA trial. Having picked the game and set the stakes, the Flints cannot now complain of the size of the pot.

After reviewing the entire record carefully, we are compelled to conclude that the attorney fees awarded in this case are not excessive.[5]

### IV

▉ The Flints complaint that the district court erred in awarding $10,000 as "reasonable, non-taxable court cost expenses". Ordinary expenses incurred by a party in prosecuting or defending suit cannot be recovered either as damages or by way of court costs in the absence of statutory provisions or usages of equity. *Hammonds v. Hammonds,* 158 Tex. 516, 313 S.W.2d 603, 605 (1958). The statute governing attorney's fees makes no provision for the award of expenses. *See* Tex.Civ. Prac.Rem.Code § 38.001. (Vernon 1986). Testimony, furthermore, indicated that the expenses included substantial photocopy, travel, long distance, postage, and messenger expense. These expenses make up the overhead of a law practice, are considered

---

4. We overrule that portion of the Flints' points of error 11–12 related to recovery of fees for services rendered in connection with claims by and against parties for which fees could not be awarded.

5. We overrule the Flints' points of error 13–14.

in setting hourly billing rates and reasonable fees, and may be recovered as a component of such fees. Presumably they were in this case. Except as included in reasonable legal fees, there is no basis for recovery of such expenses under section 38.001.

IPS argues that recovery of these expenses as "incidental damages" is allowed by Texas Business & Commerce Code Annotated § 2.709(a) (Vernon 1967). We need not decide this question, however, because the only issue reserved for separate trial before the court was reasonable attorney fees under article 2226. IPS never sought recovery of any amount as incidental damages under § 2.709(a).

Inasmuch as there is no legal basis for the award of expenses, it must be eliminated.[6]

V

The judgment is reformed to eliminate the award of $10,000 expenses, and as reformed, is affirmed.[7] Tex.R.App.P. 80.

BAKER, J., files a dissenting opinion.

BAKER, Justice, dissenting.

The majority has affirmed the trial court's judgment awarding $160,000.00 in attorney fees to Intercontinental Pipe & Steel, Inc., (IPS). In my view, the conclusion reached by the majority is erroneous and the reasoning employed to reach this conclusion is flawed. Accordingly, I respectfully dissent.

IPS originally instituted suit against Flint & Associates, J.A. Flint, Donald Flint and Douglas Flint, d/b/a Flint & Associates (Flint) on a sworn account suit, for the sale and delivery of a quantity of oil well casing. Flint filed a verified denial to the sworn account suit, and asserted a counterclaim under the Deceptive Trade Practices Act, alleging that Flint had suffered damages by virtue of the casing being unfit for

use. *See* Tex.Bus. & Com.Code Ann. § 17.41–17.62 (Vernon Supp.1986). At the conclusion of all the evidence, Flint stipulated to liability for the purchase price on the IPS sworn account. Flint's DTPA counterclaim was submitted to the jury and the jury found adversely to Flint. The parties stipulated that the attorney fees issue would be submitted to the court for determination at a later date. When the parties appeared for testimony concerning attorney fees to be awarded, Flint objected to any attorney fees testimony other than that dealing with the IPS specific claim to recover on the sworn account. The IPS attorneys stipulated they were not asking for attorney fees under the DTPA and the court understood that IPS was asking for attorney fees only under Section 38.001, Tex.Civ.Prac.Rem.Code Ann. (Vernon, 1986). Testimony of both of the attorneys representing IPS during the trial was that they were unable to, and therefore did not, segregate the time that they spent preparing their sworn account case from the time that they spent defending the Flint DTPA counterclaim. There was no evidence by either attorney that effectually segregated attorney's time with regard to prosecuting the sworn account cause of action from the time involved in defending the DTPA counterclaim. The court awarded $160,000.00 in attorney's fees to the IPS attorneys.

On appeal Flint asserts that the trial court abused its discretion by awarding attorney fees without support in the record and argues that IPS failed to segregate the time spent in prosecuting its sworn account claim from the time spent defending the Flint DTPA counterclaim. The majority has held that the failure to segregate the time with respect to attorney's fees by the IPS attorneys was not fatal and has affirmed the trial court's judgment permitting IPS to recover attorney's fees both for prosecuting it's own claim, and defending against the Flint's counterclaim.

Although the majority recognizes the general rule to be that in a case involving

---

6. We sustain the Flints' points of error 17–22.

7. In view of our disposition of the case, we need not address the Flints' complaints about the

awards of attorney fees for legal services rendered on appeal in points of error 23–26.

more than one claim, attorney's fees can be awarded only for necessary legal services rendered in connection with the claims for which recovery is authorized, *See Bray v. Curtis,* 544 S.W.2d 816, 820 (Tex.Civ.App. —Corpus Christi 1976, writ ref'd n.r.e.), the majority chooses to rely on the rationale expressed by this court in *Wilkins v. Bain,* 615 S.W.2d 314 (Tex.Civ.App.—Dallas 1981, no writ). The majority characterizes the rationale of *Wilkins* as a corollary to the general rule enunciated in *Bray.* A corollary is defined as a proposition following so obviously from another that it requires little or no demonstration. *Funk and Wagnalls, New Comprehensive International Dictionary of the English Language* (Deluxe Edition 1980). In my view, the rationale expressed in *Wilkins* is far from being a corollary to the rationale expressed in *Bray* and in fact is an exception to the general rule. As stated by the majority, *Wilkins* holds that services for which reasonable fees may be awarded include those rendered in connection with all claims, even if the recovery of attorney's fees is not authorized for such claims, if they arise out of the same transaction and are so interrelated that their prosecution or defense entails proof for denial of the same facts. *Wilkins,* 615 S.W.2d at 316.

In my view, the majority fails to properly address what is the correct inquiry in the determination of whether the general rule set out in *Bray* or the exception set out in *Wilkins* applies to attorney fees in this case. The correct inquiry, in my opinion, is what facts were required to be proved by IPS to establish its sworn account claim against the Flints as opposed to what facts were required to be proved to defeat Flint's DTPA counterclaim.

When a verified denial is filed in response to a sworn account petition, that denial destroys the evidentiary effect of the itemized account and forces a plaintiff to put on proof as at common law with respect to the claim. The essential elements of a common law cause of action on account are that: (1) there was a sale and delivery of the merchandise; (2) the amount of the account was just, that is, that the prices are charged in accordance with an agreement; and (3) the amount is unpaid. *Nichols v. Taylor,* 662 S.W.2d 396, 398 (Tex.App.—Corpus Christi 1983, no writ); *Arndt v. National Supply Company,* 633 S.W.2d 919, 992 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.); *Blue Bell Inc. v. Isbell,* 545 S.W.2d 563, 565 (Tex.Civ.App.—El Paso 1976, no writ). These elements are subject to proof by a simple set of requests for admissions of fact or of interrogatories to the opposing party. In my opinion, the proof of these facts permitting recovery on the sworn account are totally different than those facts required for proof to defend against the Flint DTPA counterclaim.

The majority further concludes that the trial court took judicial notice of all claims that had been filed in the case in assessing its award of attorney's fees and from the court's knowledge of those claims, as reflected in the record, the court could determine what portion of the requested fees was reasonably attributable to services for which fees could not be recovered. In my opinion, the record is totally devoid of any evidence which would clearly differentiate fees incurred by IPS in prosecuting its sworn account claim from the fees incurred in defending against the Flint DTPA claim. Therefore, it is impossible for the trial court to properly exclude the time spent in defending against the DTPA counterclaim and in prosecuting and defending against the other parties by the process of taking judicial notice of the case filed and the work done. There is no evidence of any kind in the record that could bring about a rational conclusion on the segregation of the attorney's fees; therefore, the failure to segregate is fatal to recovery of any fees by IPS and its attorneys. *See International Security Life Insurance Co. v. Finck,* 496 S.W.2d 544, 546–547 (Tex.1973); *Wood v. Component Construction Co.,* 722 S.W.2d 439, 444 (Tex.App.—Fort Worth 1986, no writ).

In my view, *Crow v. Central Soya Co., Inc.* 651 S.W.2d 392 (Tex.App.—Fort Worth 1983, writ ref'd n.r.e.) is dispositive of the attorney fee issue in this case. I view *Crow* as almost exactly on all fours with

this case. I would hold that the general rule as set forth in *Bray* and exemplified in *Crow* is applicable and that, therefore, IPS is not entitled to recover any attorney fees because of its failure to properly segregate the time. I would reform the trial court's judgment by deleting the attorney fees in their entirety.

I am in agreement with the majority's decision with respect to the deletion of the "non-taxable costs" in the sum of ten thousand dollars awarded by the trial court.

In conclusion, I would reform the trial court's judgment by deleting both attorney fees and the non-taxable costs from the IPS recovery, and affirm only the trial court's award of the IPS sworn account balance together with pre-judgment interest and post-judgment interest and costs both in the trial court and on this appeal.