COMMERCIAL UNION INSURANCE
COMPANY and Tocon Construction
Corporation, Appellants,

v.

LA VILLA INDEPENDENT SCHOOL
DISTRICT, Appellee.

and

LA VILLA INDEPENDENT SCHOOL
DISTRICT, Appellant,

v.

Bill CAUDLE, Sr., Appellee.

No. 13–88–642–CV.

Court of Appeals of Texas,
Corpus Christi.

Oct. 12, 1989.

Rehearing Denied Nov. 9, 1989.

H. Hollis Rankin, III, Mullin & Rankin, McAllen, for appellants.

Raymundo Lopez, Garcia & Lopez, Edinburg, for appellee.

Before UTTER, SEERDEN and BENAVIDES, JJ.

## OPINION

UTTER, Justice.

La Villa Independent School District (La Villa), brought suit against Commercial Union Insurance Company (Commercial), Tocon Construction Corporation (Tocon), and Bill Caudle, Sr., alleging numerous theories of recovery as to each defendant for problems that developed with respect to a gymnasium that Tocon constructed. Commercial filed a performance bond on this project in favor of La Villa, and Caudle was the president, chief executive officer, and majority shareholder of Tocon. After a bench trial, the court ordered that La Villa recover $12,950.00 and attorneys' fees from Commercial and Tocon, jointly and severally, but denied any recovery against Caudle. The trial court's order specifically denies La Villa's Deceptive Trade Practice Act claims, but does not otherwise specify under which theory La Villa is being permitted to recover. The court further denied all of the defendant's counterclaims, including Tocon's counterclaim regarding a "liquidated damage provision" in its contract with La Villa. We affirm in part and reverse in part.

La Villa entered into a construction contract with Tocon, the general contractor, dated March 16, 1983, for the construction of a new gymnasium. Pursuant to the requirements of the contract and Tex.Rev. Civ.Stat.Ann. art. 5160 (Vernon 1987), Tocon furnished La Villa with a performance bond, dated March 16, 1983, for $196,050.00, with Commercial as surety. This amount was later increased to $196,462.00 to reflect the full amount of the contract price. On April 1, 1983, Rudy Gomez, La Villa's architect, issued notice to Tocon to proceed. This notice informed Tocon that work was to begin within ten days of the notice and that Tocon had until August 8, 1983 to complete the project. Tocon thereafter commenced construction of the gymnasium.

On November 7, 1983, a certificate of substantial completion was issued by the architect and La Villa, as reflected on that certificate, accepted the work completed and assumed full possession on January 19, 1984. Tocon was subsequently notified of various deficiencies which needed correction. A letter from Gomez dated January 16, 1984 informed Tocon that there was a problem with paint discoloration. Although Tocon corrected several other defects and represented that it would correct the problem with the paint discoloration, Tocon failed to remedy this problem. On August 13, 1985, La Villa accepted a $12,950.00 bid to re-paint the gymnasium from another contractor. On February 20, 1986, La Villa filed this suit to recover its losses.

In considering a "no evidence", "insufficient evidence" or "against the great weight and preponderance of the evidence" point of error, we will follow the well-established test set forth in *Pool v. Ford Motor Co.*, 715 S.W.2d 629 (Tex.1986); *Dyson v. Olin Corp.*, 692 S.W.2d 456 (Tex.1985); *Glover v. Texas General Indemnity Co.*, 619 S.W.2d 400 (Tex.1981); *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965); *Allied Finance Co. v. Garza*, 626 S.W.2d 120 (Tex. App.—Corpus Christi 1981, writ ref'd n.r. e.); and Calvert, *No Evidence and Insufficient Evidence Points of Error*, 38 Texas L.Rev. 361 (1960).

■ There were no findings of fact and conclusions of law filed in this cause. Absent findings of fact and conclusions of law, all questions of fact should be presumed to support the judgment, and the judgment should be affirmed if it can be upheld on any legal theory that finds support in the pleadings and in the evidence. *Point Lookout West, Inc. v. Whorton*, 742 S.W.2d 277, 278 (Tex.1987); *Campbell & Son Construction Co. v. Housing Authority of Victoria*, 655 S.W.2d 271, 274 (Tex. App.—Corpus Christi 1983, no writ).

Commercial and Tocon's first through third points of error contend that the trial

court erred in granting a recovery against Commercial upon the surety bond. They argue that the evidence conclusively showed that the claim was barred by limitations and that the trial court's holding to the contrary was against the overwhelming weight and preponderance of the evidence.

The record reflects that the performance bond stated that "any suit under this bond must be instituted before the expiration of two (2) years from the date on which final payment under the Contract falls due." However, the performance bond also stated that it was being "... executed pursuant to the provisions of Article 5160 of the Revised Civil Statutes of Texas as amended, and all liabilities on this bond ... shall be determined in accordance with the provisions of said Article...." Gomez filed a certificate of substantial completion on November 7, 1983, and Tocon requested final payment on November 29, 1983. Gomez sent La Villa a letter dated December 1, 1983, wherein he submitted Tocon's request for final payment, but stated various amounts were going to be retained to correct deficiencies and for liquidated damages. La Villa made this payment by check dated February 14, 1984. La Villa filed this suit to recover its losses on February 20, 1986.

The issues are whether the one or two year statute of limitations is applicable, and whether the trial court's determination that the case was not barred by limitations is supported by the evidence.

The events of this transaction occurred as follows:

1. March 16, 1983—parties enter a contract and bond

2. April 1, 1983—notice to proceed is issued by the architect

3. August 8, 1983—date of completion as specified in the architect's notice to proceed

4. November 7, 1983—date of substantial completion signed by architect

5. January 16, 1984—architect states that there is a problem with paint discoloration

6. January 19, 1984—date of substantial completion accepted by school district

7. February 14, 1984—last payment made by school district received by Tocon

8. March 26, 1984—letter by architect regarding paint problem

9. November 27, 1984—Caudle/Tocon letter stating that paint work will be subcontracted out

10. October 1, 1985—attorney demand letter

11. February 20, 1986—suit filed.

Under Tex.Rev.Civ.Stat.Ann. art. 5160 G, no suit shall be instituted on a bond after the expiration of one year *after the date of final completion of such contract.* However, the performance bond in question stated that any suit must be instituted before the expiration of two years *from the date on which final payment* under the contract falls due.

We find that under either application of the statute of limitations, this case is barred by limitations. The evidence was that on November 7, 1983, La Villa's architect signed the certificate of substantial completion. On January 19, 1984, La Villa accepted the certificate of substantial completion. On February 14, 1984, payment was received. Suit was not filed until February 20, 1986, which is more than two years after La Villa accepted the certificate of substantial completion.

It is settled that a surety on a bond is entitled to rely on the architect's certificate of completion as final discharge of its duty on the bond. *Transamerica Insurance Co. v. Victoria Housing Authority,* 669 S.W.2d 818 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.); *City of Midland v. Waller,* 430 S.W.2d 473 (Tex.1968). In *Transamerica,* this Court held that substantial completion of a contract is regarded as full performance. *Transamerica,* 669 S.W.2d at 822. The contract between La Villa and Tocon defines the date of substantial completion as "the Date certified by the Architect when Construction is sufficiently complete, in accordance with the Contract Documents, so the Owner can

occupy or utilize the work or designated portion thereof for the use of which it is intended." If we apply Article 5160 G, this case should have been filed no later than one year after January 19, 1984, the date the school district accepted the certificate of substantial completion. If we apply the two year statute, the suit should have been brought before the expiration of two years from February 14, 1984, the date the last payment was made to Tocon by the school district. Under either interpretation, the case is barred.

■ La Villa argues that the statute was extended by the representations by Tocon that they were going to repair the paint problems. The representations by Tocon might have been used to toll the statute of limitations regarding any liability the contractor might have had to the owner if such question was in issue, but we hold that it would not serve to toll the statute regarding the surety whose duty under the bond is discharged upon completion of the contract. La Villa does not direct us to any portions of the record in which Commercial took any affirmative act which would toll the statute of limitations as to it. We sustain Tocon and Commercial's first three points of error.

Commercial and Tocon's fourth through sixth points of error contend the trial court erred in refusing to grant Tocon an offset of $9,100.00, plus interest and attorneys' fees. They complain that the evidence conclusively showed that the "liquidated damage provision" under which La Villa retained the $9,100.00 was a penalty provision and that the trial court's holding to the contrary was against the overwhelming weight and preponderance of the evidence.

The contract between Tocon and La Villa provided that:

### TIME OF COMMENCEMENT AND SUBSTANTIAL COMPLETION

The Work to be performed under this Contract shall be commenced as noted in the Notice to Proceed, and, subject to authorized adjustments, Substantial Completion shall be achieved not later than as noted in the Notice to Proceed.

The Owner will suffer financial loss if the Project is not Substantially Complete on the date set forth in the Contract Documents. The Contractor (and his Surety) shall be liable for and shall pay to the Owner the sums thereinafter stipulated as fixed, agreed and liquidated damages for each calendar day of delay until the work is Substantially Complete:

One Hundred Dollars ($100.00)

Pursuant to this provision, La Villa withheld $9,100.00 from Tocon's payment because of Tocon's failure to complete the project on the date set forth in the contract. Alejas Salazar, the superintendent of the La Villa Independent School District, testified that the teachers and the students suffered an inconvenience because they did not have full use of the building. Salazar further testified that he could not actually calculate dollar for dollar the damages suffered by the inconvenience, but that a hundred dollars a day would be a reasonable amount to retain as liquidated damages. Salazar also testified that the liquidated damage provision was included in the contract to provide retribution should they suffer monetarily.

■ The right of parties to make their own bargains is not unlimited, but rather is limited by the universal rule for measuring contractual damages based on just compensation for the loss or damage actually sustained. *Stewart v. Basey*, 150 Tex. 666, 245 S.W.2d 484, 486 (1952). A liquidated damage provision will be enforced when the court finds: (1) the harm caused by the breach is incapable or difficult of estimation; and (2) that the amount of liquidated damages called for is a reasonable forecast of just compensation. *Rio Grande Valley Sugar Growers, Inc. v. Campesi*, 592 S.W.2d 340, 342 n. 2 (Tex.1979); *Stewart*, 245 S.W.2d at 486; *Stewart v. Basey*, 241 S.W.2d 353, 357 (Tex.Civ.App.—Austin 1951, writ ref'd). However, the party asserting that a liquidated damages clause is, in fact, a penalty provision has the burden of proving this defense. *Johnson Engineers, Inc. v. Tri–Water Supply Corp.*, 582 S.W.2d 555, 557 (Tex.Civ.App.—Texarkana 1979, no writ). In order to meet this

burden, the party asserting the defense is required to prove the amount of the other parties' actual damages, if any, to show that the liquidated damages are not an approximation of the stipulated sum. *Id.; see also Robinson v. Granite Equipment Leasing Corp.,* 553 S.W.2d 633, 637 (Tex. Civ.App.—Houston [1st Dist.] 1977, writ ref'd n.r.e.); *Oetting v. Flake Uniform & Linen Service, Inc.,* 553 S.W.2d 793, 795 (Tex.Civ.App.—Fort Worth 1977, no writ). If the liquidated damages are shown to be disproportionate to the actual damages, then the liquidated damages must be declared a penalty and recovery limited to the actual damages proven.

■ Since no findings and conclusions were filed by the trial court, we presume that the trial court found that the damages caused by Tocon's breach were either incapable or difficult to estimate and that the liquidated damages constituted just compensation. No evidence was offered regarding the extent, if any, of La Villa's actual damages pertaining to the inability to use the gymnasium, and the record clearly supports the difficulty in ascertaining damages resulting from the delay in use to a secondary school's gymnasium. *See City of Marshall v. Atkins,* 127 S.W. 1148, 1151 (Tex.Civ.App.1910, writ dism'd); *but see Loggins Construction Co. v. Steven F. Austin State University Board of Regents,* 543 S.W.2d 682, 685–86 (Tex.Civ. App.—Tyler 1976, writ ref'd n.r.e.) (held that withholding $250.00 a day for delayed usage of a football stadium was a penalty as a matter of law). Therefore, after reviewing the entire record, we hold that the trial court did not err in refusing to offset $9,100.00, plus attorneys' fees and interest from the damages it awarded La Villa. Appellants' fourth through sixth points of error are overruled.

By their seventh through tenth points of error, Commercial and Tocon contend the trial court erred in awarding attorney's fees to La Villa. They complain that the award of attorney's fees was unreasonable and unnecessary because Tocon agreed to pay the full amount due, plus attorney's fees, prior to suit being filed, but that La Villa declined such payment when "Tocon refused to surrender its right to claim that the 'liquidated damage provision' was invalid and to recover sums withheld thereby." They also argue that there is either no evidence or insufficient evidence to support an award of attorney's fees to La Villa.

■ The record and the above complaints reveal that Tocon placed a condition upon its settlement offer; i.e. that Tocon would retain the right to claim that the liquidated damage provision was invalid. We further disagree with Commercial and Tocon's assertions that the amount offered was all that La Villa was entitled to receive. The contract expressly permits the liquidated damages, and La Villa was within their rights to seek such an award. Therefore, La Villa was not offered to be paid all that it was seeking in damages.

■ Although Tex.Civ.Prac. & Rem. Code Ann. § 38.002(3) (Vernon 1986) does include, as a prerequisite to a recovery of attorney's fees, that "payment for the just amount owed must not have been *tendered* before the expiration of the 30th day after the claim is presented (emphasis added)," an *offer to settle* is insufficient as a defense to a claim for attorney's fees. Even had there been a tender in this case, it has been held that a tender of an amount less than the amount claimed is legally insufficient to avoid the awarding of attorney's fees. *Hoot v. Quality Ready–Mix Co.,* 438 S.W.2d 421, 428–29 (Tex.Civ.App.—Corpus Christi 1969, no writ); *Barreda v. Merchants National Bank,* 206 S.W. 726, 727 (Tex.Civ.App.—San Antonio 1918, no writ). Further, attorney fees are recoverable under the statute regardless of when suit is filed if payment is not made within the thirty day period. *Gateley v. Humphrey,* 151 Tex. 588, 254 S.W.2d 98, 101 (1952); *Arkansas Natural Gas Co. v. Renfro,* 430 S.W.2d 591, 592 (Tex.Civ.App.—Waco 1968, writ ref'd n.r.e.). We finally note that the trial court could have found and concluded that Tocon failed to make a good faith attempt to settle this case.

Raymundo Lopez, La Villa's attorney, testified that he spent 126 hours on the case prior to trial, and an additional twenty

hours during the trial of the case. He further testified that his normal rate is $85.00 an hour for out of court time and $100.00 an hour for court time, and requested various amounts for post-judgment attorney's fees. He also testified that the above amounts were fair, reasonable and customary attorney's fees in Hidalgo County, Texas.

In the absence of findings of fact and conclusions of law, we will presume that the court found such facts as were necessary to support the judgment. *Commercial Credit Corp. v. Smith*, 143 Tex. 612, 187 S.W.2d 363, 365 (1945); *Bennett v. State National Bank*, 623 S.W.2d 719, 722 (Tex.Civ.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.). We hold that there is sufficient evidence to support La Villa's amount of attorney's fees to La Villa. Tex. Civ.Prac. & Rem.Code Ann. § 38.001 (Vernon 1986). We overrule Commercial and Tocon's seventh through tenth points of error.

By its first point of error, La Villa contends the trial court erred in refusing to enter judgment against Caudle in his individual capacity for his own conduct and for the conduct of Tocon. By its second point of error, La Villa asserts the trial court erred in refusing to modify or correct the judgment and in not granting a new trial. By its fourth point of error, La Villa argues that the trial court erred because entering judgment for Caudle was so against the great and overwhelming weight of the evidence as to be manifestly erroneous and unjust.

When reviewing a jury verdict to determine the factual sufficiency of the evidence, the court of appeals must consider and weigh all the evidence, and should set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986); *Dyson v. Olin Corp.*, 692 S.W.2d 456, 457 (Tex.1985). However, absent findings of fact and conclusions of law, all questions of fact should be presumed to support the judgment, and the judgment should be affirmed if it can be upheld on any legal theory that finds support in the pleadings and in the evidence. *Point Lookout West, Inc. v. Whorton*, 742 S.W.2d 277, 278 (Tex. 1987); *Campbell & Son Construction Co. v. Housing Authority of Victoria*, 655 S.W.2d 271, 274 (Tex.App.—Corpus Christi 1983, no writ).

The corporate fiction shall be disregarded, even though corporate formalities have been observed and corporate and individual property have been kept separately, when the corporate form has been used as part of a basically unfair device to achieve an inequitable result. *Castleberry v. Branscum*, 721 S.W.2d 270, 271 (Tex. 1986). Specifically, the corporate fiction shall be disregarded:

(1) when the fiction is used as a means of perpetrating fraud;

(2) where a corporation is organized and operated as a mere tool or business conduit of another (alter ego);

(3) where the corporate fiction is resorted to as a means of evading an existing legal obligation;

(4) where the corporate fiction is employed to achieve or perpetrate monopoly;

(5) where the corporate fiction is used to circumvent a statute, and

(6) where the corporate fiction is relied upon as a protection of crime or to justify wrong.

*Id.* at 272. However, the corporate veil should be pierced and personal liability imposed upon an individual only under the most compelling of circumstances. *Aztec Management & Investment Co. v. McKinzie*, 709 S.W.2d 237, 239 (Tex.App.—Corpus Christi 1986, no writ); *Hickman v. Rawls*, 638 S.W.2d 100, 102 (Tex.App.—Dallas 1982, writ ref'd n.r.e.). The fact that a majority or even all of the stock in a corporation is owned by a single individual does not of itself make the corporation the alter ego of the individual or, without more, justify the piercing of the corporate veil. *See Massachusetts v. Davis*, 140 Tex. 398, 168 S.W.2d 216, 224 (1942), *cert. denied*, 320 U.S. 210, 63 S.Ct. 1447, 87 L.Ed. 1848 (1943); *Aztec Management*, 709 S.W.2d at 239.

■ Tocon commenced business sometime around March 15, 1978 and has received both a corporate charter and a certificate of good standing from the State of Texas. Tocon has enacted bylaws, filed franchise and income tax returns, appointed or elected directors and officers, and held stockholder and director's meetings. Eugene Vaughn was the original president, but Caudle is the current president of the corporation. Tocon issued shares of stock for cash consideration when it was first organized with Vaughn and Caudle each receiving fifty percent of the shares in the corporation. In 1980–1981, Vaughn and Caudle each sold Marvin Luksa five percent of the shares they owned.

It was decided near the completion of the La Villa project that Tocon was going to terminate its construction business. Luksa left Tocon in January of 1984 after deciding not to purchase the corporation. The record reflects that this occurred after the La Villa contract had been substantially completed and that Tocon was solvent and in good operating condition when he left. Thereafter, Tocon bought Luksa's shares for around $25,000.00.

Vaughn's subsequent death triggered a buy/sell agreement that had been previously created. Tocon thereafter purchased Vaughn's interest as follows: 3,050 shares at $3.57 per share; 3,050 shares to be bought at a future date at ten percent of the book value established by a 1984 audit report. Ultimately, Tocon suffered a cash shortage which resulted in Caudle, as the sole remaining shareholder, loaning cash to the corporation, which by the time of trial amounted to $20,000.00. However, all other debts, including pre–1984 loans made by Caudle, have been paid and Tocon still has a substantial amount of equipment and computer software.

Caudle received $1,500.00 in salary in 1985, but has not received remuneration of any kind from Tocon since that time. The record, as a whole, reveals that Tocon has always been operated as an independent entity and that the shareholder's personal accounts have not been commingled with Tocon's accounts. The record further reveals that La Villa contracted with Tocon without personal guarantees from its shareholders and that Luksa, not Caudle, originally handled the La Villa project.

After weighing all the evidence, we hold that the verdict is not so contrary to the overwhelming weight of the evidence as to be clearly unjust and wrong.

We can find no basis which would permit us to pierce Tocon's corporate veil or to impose liability upon Caudle as an individual. Although Caudle did write various letters stating that he would personally fund the payment for the corrective work, these letters were apparently written for settlement purposes so as to avoid litigation and these offers were obviously not accepted by La Villa. We overrule La Villa's first, second, and fourth points of error.

By its third point of error, La Villa contends the trial court erred in admitting exhibits M21–M36 and M38 into evidence. La Villa complains that although it requested Caudle to produce these documents by a "Request for Production and Inspection of Documents" on January 9, 1989, Caudle failed to produce these documents prior to the time he offered them at trial.

The record reveals that La Villa expressly stated that it had no objection when M21 was offered for admission into evidence and that M22–25 either do not exist or were never offered and admitted into evidence. In fact, M22–25 do not appear to be listed in the exhibit index and have not been made a part of the record on appeal. The record further reveals that Caudle testified regarding the contents of M26–M36 and M38 in detail without objection just before they were offered for admission into evidence. The record also reflects that La Villa called Caudle to testify during its case-in-chief and that Caudle testified that he had personally *loaned* money to Tocon so that it could handle its financial obligations. M26–36 constitute various promissory notes and the respective checks which were executed between Caudle/Bill Caudle Properties and Tocon.

■ We hold that La Villa has waived error, if any, committed by the trial court. A party may not complain on appeal

of the improper admission of evidence when that party, itself, introduced evidence of a similar character. *McInnes v. Yamaha Motor Corp., U.S.A.*, 673 S.W.2d 185, 188 (Tex.1984), *cert. denied*, 469 U.S. 1107, 105 S.Ct. 782, 83 L.Ed.2d 777 (1985); *Pouncy v. Garner*, 626 S.W.2d 337, 340 (Tex. App.—Tyler 1981, writ ref'd n.r.e.). The admission of improper evidence is also waived when testimony to the same effect has been previously admitted without objection. *Badger v. Symon*, 661 S.W.2d 163, 164 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.); *Hundere v. Tracy & Cook*, 494 S.W.2d 257, 263–64 (Tex.Civ. App.—San Antonio 1973, writ ref'd n.r.e.). Moreover, to be timely, an objection to the admission of evidence must be made *before* testimony has been adduced regarding the substance of the objectionable evidence. *Montes v. Lazzara Shipyard*, 657 S.W.2d 886, 889 (Tex.App.—Corpus Christi 1983, no writ); *Harry Brown, Inc. v. McBryde*, 622 S.W.2d 596, 600 (Tex.App.—Tyler 1981, no writ). Here, La Villa waited until after Caudle testified in detail as to the contents of M26–M36 and M38 before lodging its objection. We overrule La Villa's third point of error.

By its fifth point of error, La Villa contends the trial court erred in refusing to file findings of fact and conclusions of law. La Villa argues that its motion for new trial had the effect of extending the time within which a request for findings of fact and conclusions of law could have been properly filed.

Tex.R.Civ.P. 296 expressly provides that the request for findings of fact and conclusions of law "shall be filed within ten days after the final judgment is signed." Although the filing of a motion for new trial used to extend the period within which such a request could be filed, amendments to Tex.R.Civ.P. 296 which became effective April 1, 1984, expressly deleted all references regarding a motion for new trial. Further, Tex.R.Civ.P. 306a now provides that "the date of judgment or order is signed as shown of record shall determine the beginning of the periods prescribed by these rules ... [including] requests for findings of fact and conclusions of law."

The record reflects that the judgment in this case was signed on September 7, 1988, but that La Villa did not file a request for findings of fact and conclusions of law until September 19, 1988. Therefore, La Villa's request was untimely and the trial court did not err in refusing to file findings of fact and conclusions of law. *Lynd v. Wesley*, 705 S.W.2d 759, 764 (Tex.App.—Houston [14th Dist.] 1986, no writ). We overrule La Villa's fifth point of error.

The judgment is REVERSED and RENDERED that La Villa take nothing against Commercial. The judgment of the trial court is otherwise AFFIRMED.