

# NUMBER 13-12-00511-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

CINTAS CORPORATION,                                                    Appellant,

v.

DAVID ARELLANO, INDIVIDUALLY,
D/B/A LAS COMADRES RESTAURANT,                          Appellee.

### On appeal from the County Court at Law No. 2
### of Cameron County, Texas.

# MEMORANDUM OPINION

### Before Justices Garza, Benavides, and Perkes
### Memorandum Opinion by Justice Perkes

Cintas Corporation ("Cintas") sued David Arellano, individually, d/b/a Las Comadres Restaurant ("Arellano") for breach of contract. After a bench trial, the trial court awarded Cintas liquidated damages in the amount of $5,000.[1] On appeal, Cintas

---

[1] In response to Cintas's lawsuit, Arellano counterclaimed for fraud and argued he never signed

argues the trial court erred by failing to award liquidated damages in accordance with the terms of the contract and by failing to award attorney's fees under section 38.001 of the Texas Civil Practice and Remedies Code. We reverse and render judgment in favor of Cintas for its liquidated damages and attorney's fees.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On August 28, 2009, a two-page "Standard Uniform Service Agreement" was signed whereby Cintas agreed to furnish various supplies for Arellano's restaurant on a weekly basis.[2] The contract was for a sixty-month term and included paper products and hand soap for the restrooms, and various cleaning supplies. The contract provided for a weekly minimum charge of $25.00 and included a liquidated-damages clause that applied in the event of early termination. The liquidated-damages clause stated that liquidated damages would be paid in an amount equal to the greater of 50% of the average weekly invoice total multiplied by the number of weeks remaining in the unexpired term, or the buy back of all products allocated at the then-current replacement values. The contract stated the liquidated damages would not be a penalty.

The record shows, and it is undisputed on appeal, that Cintas installed its soap dispensers in the restrooms at Las Comadres, kept them filled with soap, and otherwise complied with the terms of the signed contract. The evidence reflects that the rate Cintas billed Arellano fluctuated each week based on the amount of weekly supplies needed at

---

a contract with Cintas. The trial court entered a take-nothing judgment against Arellano on his counterclaim. Arellano has not filed a notice of appeal, and has not filed a brief for consideration on appeal.

[2] The contract was front-and-back on a single piece of paper.

2

the restaurant. Arellano terminated the contract early, with 223 weeks remaining on its term and a $90.95 average weekly invoice. In this regard, Cintas sought to recover liquidated damages under the weekly invoice formula included in the contract.[3]

At trial, Arellano denied any knowledge of a written agreement between himself and Cintas.[4] According to Arellano, he thought they entered a verbal agreement for services on a month-to-month basis. Arellano testified that while his wife Norma may have signed his name to the agreement, he could not say with certainty.[5]

The trial court entered judgment in favor of Cintas on its breach-of-contract claim and awarded Cintas "Liquidated damages pursuant to the Agreement in the total amount of $5000.00. . . ." The trial court did not award Cintas any amount for its attorney's fees. Cintas requested findings of fact and conclusions of law.[6] In pertinent part, the trial court entered the following unchallenged findings of fact concerning the contract terms:

> 6. Under the terms of the Facility Services Rental Services Agreement, termination prior to the expiration of the 60 month term would constitute a breach of that agreement.
> . . . .

---

[3] There is no evidence regarding the amount of damages under the buy-back provision.

[4] Monica Palmquist Cuellar was the Cintas sales representative who solicited Arellano to enter the contract. Cuellar testified by deposition. According to Cuellar, Norma Arellano, Arellano's wife, signed his name to the contract with Arellano's knowledge and permission. Cuellar testified that she overheard Arellano grant Norma permission to sign the contract for him while Norma and Arellano spoke on the telephone. Cuellar further testified that on the day that Norma signed the contract, Arellano later met with Cuellar to review the terms of the agreement.

[5] Arellano acknowledged that Cintas sent him a pre-suit demand letter in this case. Although Cintas received a letter in response on "Las Comadres" letterhead, at trial Arellano denied that he authored the response letter. Arellano testified that his wife may have written the response letter to Cintas and signed his name to it. But according to Arellano, he could not even be certain it was his wife who signed his name to the response letter.

[6] By its first issue, Cintas challenged the trial court's failure to file findings of fact and conclusions of law on appeal. We abated this appeal for the entry of findings of fact and conclusions of law, and the trial court has since filed its findings of fact and conclusions of law. Cintas's first issue is therefore overruled as moot. *See* TEX. R. APP. P. 47.1; TEX. R. CIV. P. 296, 297.

3

8. At the time that Mr. Arellano discontinued service with Cintas, 223 weeks remained according to the Facility Services Rental Service Agreement.

9. The weekly invoice amount for the service provided by Cintas to David Arellano, Individually and D/B/A Las Comadres Restaurant, was $90.95.

The trial court did not enter any fact findings that would show how it arrived at its award of $5,000 in liquidated damages. Rather, it entered a conclusion of law that the liquidated-damages clause was unenforceable because it was a penalty, without further discussion.

## II. LIQUIDATED DAMAGES

By its second issue, Cintas argues the trial court erred by not awarding the amount of liquidated damages required under the contract language. We agree.

At the outset we note that, to the extent of any conflict between them, the trial court's findings of fact concerning the contract's terms and breach, control over its conclusion of law that the liquidated-damages clause in the contract is an unenforceable penalty. *See Brown v. The State Bar of Tex.*, 960 S.W.2d 671, 674 (Tex. App.—El Paso 1997, no writ) ("[W]here the trial court's findings of facts conflict with its conclusions of law, findings of facts will be deemed to control."); *Buzbee v. Buzbee*, 870 S.W.2d 335, 340 (Tex. App.—Waco 1994, no writ) (same); *Cranetex, Inc. v. Precision Crane & Rigging of Houston, Inc.*, 760 S.W.2d 298, 301 (Tex. App.—Texarkana 1988, writ denied) (same). Whether a contractual provision is an enforceable liquidated-damages clause or an unenforceable penalty is a question of law which we review de novo. *See Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 664 (Tex. 2005); *Phillips v. Phillips*, 820 S.W.2d 785, 788 (Tex. 1991); *see also Hydrocarbon Mgmt. v. Tracker Expl., Inc.*, 861

4

S.W.2d 427, 431 (Tex. App.—Amarillo 1993, no writ) (holding appellate review of conclusions of law is de novo). The contract in this case involves a services agreement. Accordingly, the common law applies, rather than the Uniform Commercial Code. *See* TEX. BUS. & COM. CODE ANN. § 2.102 (West 2009) (stating "this chapter applies to transactions in goods"); *Palmer v. Epsey Hutson & Assoc.*, 84 S.W.3d 345, 355 (Tex. App.—Corpus Christi 2002, pet. denied); *Freeman v. Shannon Constr., Inc.*, 560 S.W.2d 732, 738 (Tex. Civ. App.—Amarillo 1977, writ ref'd n.r.e.).

Generally, the party maintaining that a liquidated-damages clause is a penalty bears the burden of pleading and proof on the penalty defense. *Phillips*, 820 S.W.2d at 789; *see also Commercial Union Ins. Co. v. La Villa Indep. Sch. Dist.*, 779 S.W.2d 102, 106 (Tex. App.—Corpus Christi 1989, no writ). However, there can be instances in which the illegal nature of a liquidated-damages clause is apparent on the face of the plaintiff's pleadings so that it is unnecessary for the defendant to specially plead illegality. *Phillips*, 820 S.W.2d at 789 (holding liquidated-damages clause for ten times actual damages facially invalid). "[C]ourts will not enforce a plainly illegal contract even if the parties do not object." *Id.*

The term "liquidated damages" ordinarily refers to an acceptable measure of damages that the parties stipulate in advance will be assessed in the event of a contract breach. *Flores v. Millennium Interests, Ltd.*, 185 S.W.3d 427, 431 (Tex. 2005) (citing *Valence Operating Co.*, 164 S.W.3d at 664). The common law has long recognized a distinction between liquidated damages and penalties. *Id.* (citing *Stewart v. Basey*, 245 S.W.2d 484, 485–86 (Tex. 1952)). Under the common law, if damages for the

5

prospective breach of a contract are difficult to measure and the stipulated damages are a reasonable estimate of actual damages, then such a provision is valid and enforceable as "liquidated damages;" otherwise it is void as a "penalty." *Id.* (citing *Phillips,* 820 S.W.2d at 788). Thus, the parties' right to reach their own liquidated-damages stipulation is limited by "the universal rule for measuring contractual damages based on just compensation for the loss or damage actually sustained." *Commercial Union Ins. Co.,* 779 S.W.2d at 106.

The Standard Uniform Service Agreement at issue in this case included the following liquidated-damages provision:

> If this agreement is terminated early, the parties agree that the damages sustained by Company will be substantial and difficult to ascertain. Therefore, if this agreement is terminated by Customer prior to the applicable expiration date for any reason other than for documented quality of service reasons which are not cured as set forth above, or terminated by Company for cause at any time, Customer will pay to Company as liquidated damages and not as a penalty, the greater of *50% of the average weekly invoice total multiplied by the number of weeks remaining in the unexpired term*, or buy back all Facility Services Products allocated to Customer at the then current replacement values.

(Emphasis added).

The evidence shows that Arellano owed Cintas a minimum of $25.00 per week under the contract, and that the amount owed each week fluctuated based on the actual amount of weekly supplies Cintas furnished the restaurant. The fluctuation in the amount owed Cintas under the contract is evidence that its damages would be difficult to ascertain. *See Fid. & Dep. Co. of Maryland v. Stool*, 607 S.W.2d 17, 26 (Tex. Civ. App.— Tyler 1980, no writ) ("[T]he harm caused by [the] breach would be difficult to estimate

6

because of the uncertainty of the fluctuations in the interest rates which, indeed, was the very reason why the parties negotiated the liquidated damages provision.").

The trial court made fact findings regarding each of the relevant terms for the liquidated damages under the weekly-invoice formula. The evidence and related fact findings show that at the time Arellano terminated the contract, the average weekly invoice amount was $90.95. Fifty percent of the average weekly invoice is $45.475. Multiplying $45.475 by the 223 weeks remaining on the contract equals $10,140.93. After review, the amount of liquidated damages appears to be a reasonable estimate of Cintas's actual damages, and Arellano did not plead or prove penalty. *See Commercial Union Ins. Co.*, 779 S.W.2d at 107; *see also Cintas Corp. v. Quevado*, No. 04-11-00142-CV, 2012 WL 1940642, at *4 (Tex. App.—San Antonio May 30, 2012, no pet.) (mem. op.) (upholding same liquidated-damages provision based on its plain language).

We conclude the trial court erred as a matter of law in failing to award Cintas liquidated damages in the amount of $10,140.93. *See Valence Operating Co.*, 164 S.W.3d at 664; *Phillips*, 820 S.W.2d at 788; *see also Hydrocarbon Mgmt., Inc.*, 861 S.W.2d at 431; *Cintas Corp. v. Quevado*, No. 04-11-00142-CV, 2012 WL 1940642, at *4. We sustain Cintas's second issue on appeal.

### III.  ATTORNEY'S FEES

By its third issue, Cintas argues the trial court erred by not awarding attorney's fees under section 38.001 of the Texas Civil Practice and Remedies Code. We agree.

We review a trial court's decision to grant or deny attorney's fees under an abuse of discretion standard. *EMC Mtg. Corp. v. Davis*, 167 S.W.3d 406, 418 (Tex. App.—

7

Austin 2005, pet. denied); *see also Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 881 (Tex. 1990) (per curiam); *Mercier v. Sw. Bell Yellow Pages, Inc.,* 214 S.W.3d 770, 776 (Tex. App.—Corpus Christi 2007, no pet.) (citing *Bocquet v. Herring,* 972 S.W.2d 19, 21 (Tex. 1998)). Section 38.001 authorizes the recovery of reasonable attorney's fees for a claim based on a contract. TEX. CIV. PRAC. & REM. CODE. ANN. § 38.001 (West, Westlaw through 2013 3d C.S.). "When a prevailing party in a breach of contract suit seeks attorney's fees under section 38.001, makes its proof, and meets the requirements of the section, an award of attorney's fees is mandatory." *Flagship Hotel Ltd. v. City of Galveston*, 17 S.W.3d 552, 563 (Tex. App.—Texarkana 2003, pet. denied); *see also Bocquet*, 972 S.W.2d at 20 (noting that statutes providing that a party "may recover" attorney's fees are not discretionary); *Mercier*, 214 S.W.3d at 775.

In order to recover attorney's fees under chapter 38, Cintas was required to show that: (1) it was represented by counsel; (2) it presented its claim to Arellano; and (3) Arellano failed to pay the just amount owed within thirty days of presentment. *See* TEX. CIV. PRAC. & REM. CODE. ANN. § 38.002 (West, Westlaw through 2013 3d C.S ). The record shows that Cintas was the prevailing party in this lawsuit and that it met each of the requirements for recovery of its attorney's fees.[7] In addition, the record reflects that Cintas presented testimony at trial concerning the amount of its claim for attorney's fees. Cintas's trial counsel testified that it incurred $7,500.00 in reasonable and necessary

---

[7] We note the record shows, as a matter of law, that Cintas complied with the requirement that it present its contract claim to Arellano so as to be able to recover its attorney's fees in its breach-of-contract suit. *See* TEX. CIV. PRAC. & REM. CODE. ANN. § 38.002 (West, Westlaw through 2013 3d C.S.); *see also Diaz v. Attorney Gen. of State of Tex.*, 827 S.W.2d 19, 23 (Tex. App.—Corpus Christi 1992, no writ). Specifically, Cintas's counsel presented the claim by letter more than thirty days before filing suit. In the letter, counsel advised that Cintas would sue and seek attorney's fees for breach of contract if Arellano did not pay the claim. In his trial testimony, Arellano acknowledged his pre-suit receipt of the letter.

attorney's fees in the trial of this case. Counsel further testified that if an appeal was taken, Cintas would incur an additional $5,000.00 in reasonable and necessary attorney's fees. Cintas's counsel also testified that Cintas would incur an additional $2,500 in reasonable and necessary attorney's fees if Arellano filed a petition for discretionary review in the Supreme Court of Texas, plus an additional $2,500 in reasonable and necessary attorney's fees in the event such a petition were granted. Arellano did not cross examine Cinta's counsel or otherwise challenge or dispute his testimony regarding the reasonableness, necessity, and amount of Cintas's attorney's fees.

When evidence of attorney's fees is not contradicted by any other witness, or attendant circumstances, and the evidence is clear, direct and positive, and free from contradiction, inaccuracies, and circumstances tending to cast suspicion thereon, it is taken as true, as a matter of law. *Brown v. Bank of Galveston, N.A.*, 930 S.W.2d 140, 145 (Tex. App.—Houston [14th Dist.] 1996, *aff'd*, 963 S.W.2d 511 (Tex. 1998)) (citing *Ragsdale*, 801 S.W.2d at 882).

We conclude the trial court abused its discretion by failing to award attorney's fees. The evidence Cintas presented in favor of its claim for attorney's fees was clear, direct and positive, and free from contradiction, inaccuracies, and circumstances tending to cast suspicion thereon. *See id.* In addition, Arellano was afforded an opportunity to contradict this evidence, but declined to do so. *See Ragsdale*, 801 S.W.2d at 882; *Brown*, 930 S.W.2d at 145 (concluding uncontroverted amount of attorney's fees was established as a matter of law; trial court erred by not awarding attorney's fees). We

sustain Cintas's third issue.   We award Cintas $7,500.00 in attorney's fees for the trial of this case, and $5,000.00 in attorney's fees for the instant appeal.

## IV.  CONCLUSION

We reverse the judgment of the trial court and render judgment that Arellano pay Cintas liquidated damages in the total amount of $10,140.93, plus attorney's fees in the amount of $12,500.00.   *See* TEX. R. APP. P. 43.3 (requiring appellate courts, as a general rule, to render the judgment the trial court should have rendered).   In the event Arellano files a petition for review in the Supreme Court of Texas, Cintas shall be entitled to $2,500 in attorney's fees from Arellano, plus an additional $2,500 in attorney's fees in the event the Supreme Court of Texas grants petition for review.

GREGORY T. PERKES
Justice

Delivered and filed the
20th day of March, 2014.